**BANK ONE, TEXAS, N.A.,
Plaintiff, Appellee,**

v.

**Paul J. MONTLE, Defendant, Appellant.**

No. 91–1723.

United States Court of Appeals,
First Circuit.

Heard March 3, 1992.
Decided May 12, 1992.

Robert Philip Hilson with whom Law Offices of Robert Philip Hilson, Professional Corp., Hingham, Mass., was on brief, for defendant, appellant.

John J. O'Connor with whom Molly H. Sherden and Peabody & Arnold, Boston, Mass., were on brief, for plaintiff, appellee.

Before TORRUELLA, Circuit Judge, CAMPBELL and WEIS,* Senior Circuit Judges.

LEVIN H. CAMPBELL, Senior Circuit Judge.

On July 30, 1990, plaintiff-appellee, Bank One, Texas, N.A. ("Bank One"), brought an action in the United States District Court for the District of Massachusetts against defendant-appellant, Paul J. Montle, to recover the deficiency due under a note executed by Montle and upon which he defaulted. Bank One's complaint alleged federal diversity jurisdiction on the basis of diversity of citizenship under 28 U.S.C. § 1332. While not specifically alleging "citizenship" the complaint stated that Bank One is a Texas financial lending institution with its principal place of business in Texas, and that defendant, Paul Montle, "is an individual residing at 147 Main Street, Hingham, Massachusetts 02043."

On December 10, 1990, Montle moved to dismiss for lack of subject matter jurisdiction on the grounds that diversity of citizenship was lacking. Montle alleged that as of July 30, 1990, the date Bank One filed its complaint, he was a domiciliary of Texas, not Massachusetts. Montle filed a supporting affidavit with his motion and Bank One filed affidavits in opposition to Montle's motion to dismiss. After a non-evidentiary hearing, held on March 28, 1991, the court denied Montle's motion. The court then granted Bank One's motion for summary judgment on its claims and Montle's counterclaims, explaining its ruling in a Memorandum and Order dated May 6, 1991. 764 F.Supp. 687. Montle appeals. We remand for further proceedings on the question of diversity of citizenship between the parties.

I.

 Federal jurisdiction based on diversity of citizenship requires that the matter in controversy be between citizens of different states. 28 U.S.C. § 1332(a)(1). For purposes of diversity, a person is a citizen of the state in which he is domiciled. *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir.1991); *Rodriguez–Diaz v. Sierra–Martinez*, 853 F.2d 1027, 1029 (1st Cir.1988); *Valedon Martinez v. Hospital Presbiteriano de la Comunidad, Inc.*, 806 F.2d 1128, 1132 (1st Cir.1986). "A person's domicile 'is the place where he has a true, fixed home and principal establishment, and to which, whenever he is absent he has the intention of returning.'" *Rodriguez–Diaz*, 853 F.2d at 1029 (quoting C. Wright, A. Miller & E. Cooper, 13B *Federal Practice & Procedure* § 3612, at 526 (1984)). Domicile is determined as of the time the suit is filed, and once diversity jurisdiction is established, it is not lost by a later change in domicile. *Lundquist*, 946 F.2d at 10; *Valedon Martinez*, 806 F.2d at 1132; *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 701 (1st Cir.1979).

* Of the Third Circuit, sitting by designation.

## II.

In contesting Bank One's assertion of diversity jurisdiction, Montle stated that before the date the complaint was filed, July 30, 1990, he had changed his domicile from Massachusetts to Texas—the same state of which Bank One was a citizen. Generally, once challenged, "the party invoking subject matter jurisdiction [here Bank One] has the burden of proving by a preponderance of the evidence the facts supporting jurisdiction." James W. Moore et al., *Moore's Federal Practice* ¶ 0.71[5.—1] (2d ed. 1985); *see also Lundquist,* 946 F.2d at 10 (plaintiff must support allegation of jurisdiction by "competent proof"); *O'Toole v. Arlington Trust Co.,* 681 F.2d 94, 98 (1st Cir.1982); *Hawes,* 598 F.2d at 702; *Lugo–Vina v. Pueblo International, Inc.,* 574 F.2d 41, 44 (1st Cir.1978). There is, however, a presumption in favor of continuing domicile, *Hawes,* 598 F.2d at 701; *see also Mitchell v. United States,* 88 U.S. (21 Wall.) 350, 353, 22 L.Ed. 584 (1875) ("domicile once acquired is presumed to continue until it is shown to have been changed"). As Montle had unquestionably been a Massachusetts domiciliary, he bore an initial burden of producing sufficient evidence to support his assertion that he had changed his domicile from Massachusetts to Texas before suit was filed. *See Lew v. Moss,* 797 F.2d 747 (9th Cir. 1986); *Slaughter v. Toye Bros. Yellow Cab Co.,* 359 F.2d 954, 955 (5th Cir.1966); *Avins v. Hannum,* 497 F.Supp. 930, 936 (E.D.Pa. 1980). Montle needed to do two things to effect a change in his domicile: he had (1) to be present in the new domicile, and (2) to intend to remain there. *Valedon,* 806 F.2d at 1132; *Hawes,* 598 F.2d at 701; *see also* 1 *Moore's Federal Practice,* ¶ 0.74[3.–1], at 780 (2d ed. 1991). The factors relevant to determining a party's intent include:

> the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment.

*Lundquist,* 946 F.2d at 11–12 (quoting 1 *Moore's Federal Practice,* ¶ 0.74[3.–3], at 788). While no single factor is controlling, some courts have established a presumption of domicile in the state in which a party is registered to vote. 1 *Moore's Federal Practice,* ¶ 0.74[3.–3] at 787. This court has not recognized such a presumption, but we have said that the place a person is registered to vote is a "weighty" factor in determining domicile. *Lundquist,* 946 F.2d at 12.

The district court found that Montle had met his initial burden of production. Montle presented his own affidavit, dated December 10, 1990, in which he averred the following: (1) he became a domiciliary of the State of Texas on June 26, 1990, the date he established residency there; (2) he was registered to vote in Texas as of July 25, 1990; (3) he maintains a Texas driver's license and his motor vehicles are registered in Texas; (4) he abandoned his Massachusetts residence in May, 1990 and he has lived and worked in Texas since May 31, 1990(5) both his children have been enrolled in Texas schools since May, 1990; (6) he has changed his mailing address for all purposes from Massachusetts to Texas; and (7) he intends to remain a permanent resident and domiciliary of Texas. Montle attached his Texas voter registration certificate, dated July 25, 1990, and his application for a Texas Driver's license, dated October 2, 1990.

Once Montle met his burden of production, the ultimate burden of proving diversity of citizenship rested with Bank One. In support of its position that Montle was not a Texas domiciliary at the time suit was filed, Bank One presented the affidavit of Devin L. Holum, a former commercial loan officer of the bank who corresponded with Montle. Holum averred that he had personal knowledge of Bank One's relationship with Montle; that he had not received any correspondence from Montle containing a return address located in Texas; and that on July 19, 1990, he received a letter from Montle with the typed return address of "147 Main Street, Hingham, MA 02043." A copy of the letter was attached to Holum's affidavit.

Bank One also presented the affidavit of Richard Jope, Supervisor of Mail and Delivery at the Hingham, Massachusetts Post Office. Jope averred that on August 9, 1990, a change of address form signed by Montle was submitted to the post office. The form indicated that Montle's old address of "175 Derby Street, Hingham" was to be changed to the new location of "202 Glennville Court, Houston, Texas." Jope further averred that the change of address was to take effect on August 14, 1990, and mail began to be forwarded to Montle in Texas on that day.

Based on these written submissions, the district court found that, "although it is a close question, ... the Bank has satisfied its burden of proving that diversity of citizenship existed on July 30, 1990, the day it filed suit." In so concluding, the district court reasoned that "the Bank's evidence calls the credibility of defendant's sworn testimony deeply into question. The evidence as a whole indicates that Montle's intent to reside permanently in Texas hardened only in retrospect, after plaintiff had attached substantial assets in Massachusetts, and was conveniently timed only to defeat this court's jurisdiction."

### III.

■ The district court's determination that Bank One had met its ultimate burden of proving that Montle was a Massachusetts domiciliary at the time suit was filed "is a mixed question of law and fact and as such may not be set aside unless clearly erroneous." *Lundquist*, 946 F.2d at 11; *Valedon Martinez*, 806 F.2d at 1132; *O'Toole*, 681 F.2d at 98; *Hawes*, 598 F.2d at 702. " '[A] finding is "clearly erroneous" when although there is evidence to

support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed.' " *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (citation omitted). This is a high hurdle. For the following reasons, however, we cannot sustain the district court's finding of diversity jurisdiction on the present record.

### IV.

■ Montle's affidavit sufficed, as the district court acknowledged, to meet his initial burden of producing evidence overturning the presumption in favor of a continuing Massachusetts domicile on the critical July 30, 1990 date. Thereafter, the ultimate burden of persuasion fell upon Bank One to prove by "competent proof" and by a "preponderance of the evidence" that diversity of citizenship had then existed between the parties, i.e., that although Montle at some point acquired a Texas domicile, and made oath to have done so on June 26, 1990, he in fact retained his Massachusetts domicile until after July 30, 1990, the date of suit. Fed.R.Evid. 301.[1] We think Bank One's affidavits were inadequate to carry this burden, although we agree that the Bank's affidavits raise doubts as to the credibility of certain assertions in Montle's affidavit.[2] Given the unsatisfactory nature of the record, we believe the court should have inquired further to assure itself of its own jurisdiction.

■ District courts have wide discretion to determine which procedures to employ in resolving the jurisdictional issue. *O'Toole*, 681 F.2d at 98. The court's discretion, however, is not unfettered. 1 *Moore's Federal Practice* ¶ 0.74[1] at 769; *see also Bose Corp. v. Consumers Union*

---

1. Rule 301 provides that

 In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

Fed.R.Evid. 301.

2. As Montle met his burden of production, we do not give special evidentiary weight to the presumption in favor of continuing domicile when adding up the evidence on Bank One's side of the ledger. *See, e.g., In re Yoder Co.*, 758 F.2d 1114, 1119 (6th Cir.1985) (stating that most commentators conclude that under Rule 301, "a presumption vanishes entirely once rebutted, and the question must be decided as any ordinary question of fact").

*of the United States, Inc.*, 466 U.S. 485, 500, 104 S.Ct. 1949, 1959, 80 L.Ed.2d 502 (1984) ("[t]he same 'clearly erroneous' standard applies to findings based on documentary evidence as to those based on entirely oral testimony, but the presumption [of correctness] has lesser force in the former situation than in the latter.") (citation omitted); *Dopp v. Franklin National Bank*, 461 F.2d 873, 879 (2d Cir.1972) ("an evidentiary hearing was necessary" where factual dispute arose on a motion for a preliminary injunction). In *Prakash v. American University*, the District of Columbia Circuit, in remanding for further proceedings on the question of diversity, stated:

> [i]n many instances, and perhaps in most, a party's intent will appear, at least in part, from facts established by documents. When, however, as here, a party expressly declares his intent, and the opposing written submissions do not demonstrate the falsity of the declaration with reasonable certainty, the issue necessarily becomes one of the declarant's credibility. In that event, the court cannot rest its decision simply on the paper record, but must hold a hearing in order to adequately assess credibility. Only in that way is a sound decision on intent possible.

*Prakash v. American University*, 727 F.2d 1174, 1180 (D.C.Cir.1984) (citations omitted); *see Rubin v. Buckman*, 727 F.2d 71, 73 (3d Cir.1984) (remanding for further proceedings on whether diversity might exist); *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) (where subject matter jurisdiction is attacked "the district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss"); *Shahmoon Industries, Inc. v. Imperato*, 338 F.2d 449, 451–52 (3d Cir.1964) (remanding case for further inquiry into the jurisdictional facts where the court had "serious doubts" as to the district court's jurisdiction based on the factual record and where the factual record

only raised doubts as to the accuracy of one of the parties' affidavits).

Here, Montle declared under oath that he was a domiciliary of Texas as of June 26, 1990. In support, Montle made oath, although without documentation, that he had lived and worked in Texas since May 31, 1990—and that he had abandoned his Massachusetts residence as of May, 1990. He further stated, also without documentation, that his children had been enrolled in Texas schools since May, 1990.[3] More convincingly, however, Montle declared that he was registered to vote in Texas as of July 25, 1990. As proof of this, he attached his Texas voter registration certificate bearing that date. Finally, Montle asserted that he maintained a Texas driver's license and that the motor vehicles which he owns are registered in Texas. These latter assertions were of little help, however, as his attached application for license indicated that he did not apply until October 2, 1990, well after suit was filed.

Bank One's written submissions in response to Montle's declaration that he was a Texas domiciliary as of the time suit was filed did "not demonstrate the falsity of this declaration with reasonable certainty." *See Prakash*, 727 F.2d at 1180. Bank One's strongest evidence was a July 19, 1990 letter from Montle to one of its officers on which Montle had typed on the top left of the letter his Massachusetts home address. This tended to belie Montle's affidavit that he had "abandoned" his Massachusetts residence in May, 1990 and had lived and worked in Texas since May 31, 1990. It did not, however, directly challenge Montle's principal assertion that he became a Texas domiciliary a week later, on June 26, 1990. To be sure, Montle's conclusion to this effect would be "entitled to little weight … if it conflicts with the objective facts," 1 *Moore's Federal Practice*, ¶ 0.74[3.–3] at 789. But Montle's sworn assertion that he became a Texas domiciliary on June 26, 1990, did not necessarily conflict with any of Bank One's information. At most, by rendering suspect

---

**3.** This is obviously an ambiguous assertion: it could mean no more than that the children

were enrolled for the fall of 1990, well after the critical July 30, 1990 filing date.

Montle's subsidiary assertions that he had abandoned his Massachusetts residence in May, Bank One's evidence called Montle's credibility into question. But this was insufficient to satisfy Bank One's burden of proving by a preponderance of the evidence that Montle was not a Texas domiciliary on July 30, 1990.

We add that citizenship or domicile, not residence, is the basis of subject matter jurisdiction. *Id.*, ¶ 0.74[3.–2], at 782. While a person may have more than one residence, he can only have one domicile. *Id.* Consequently, the continued use of a Massachusetts residence alone, in light of Montle's other evidence—especially the objective evidence that Montle had registered to vote in Texas prior to the commencement of the suit—does not satisfy Bank One's burden of proving by a preponderance of the evidence that Montle was not a Texas domiciliary.

Bank One's other evidence was even less conclusive. Bank One presented the affidavit of a postal worker who averred that Montle submitted a change of address form to the Hingham post office on August 9, 1990 asking that mail should be forwarded to a Texas address beginning on August 14. The address that Montle sought to change, however, was his business address. The fact that he waited until August 9, 1990 to change his business address does not preclude the possibility that he had changed his domicile to Texas by July 30, 1990. Nor does it necessarily disprove that he was living and working in Texas as far back as May, although it certainly raises a question about that portion of Montle's affidavits. As we have stated, all that is required to effect a change in domicile is actual presence in the new domicile and an intent to remain. *See Valedon,* 806 F.2d at 1132; *Hawes,* 598 F.2d at 701; *see also* 1 *Moore's Federal Practice,* ¶ 0.74[3.–1], at 780. While the location of a person's business is certainly probative of intent, "courts tend to emphasize the location of one's domestic and social life over her business contacts." 1 *Moore's Federal Practice,* ¶ 0.74[3.–3], at 789 (citations omitted).

In rejecting Montle's assertions that he was a Texas domiciliary by the time Bank One filed suit, the district court commented that Montle's intent to reside in Texas had "hardened only in retrospect" and "was conveniently timed only to defeat this court's jurisdiction." This comment was material to the extent it reflected perception of a possible motive for Montle to lie as to when he changed his domicile; but it goes too far in implying that there was something impermissible about changing domicile to defeat a federal court's jurisdiction. "[I]t has long been the rule that motive for the change in residence is irrelevant in determining domicile." *Hawes,* 598 F.2d at 701; *Moore's Federal Practice,* ¶ 0.74[3.–4], at 792 ("it has become axiomatic that a change of domicile will be recognized even if it was made for the purpose of creating diversity jurisdiction"). Moreover, "there is no minimum period of residency required. A citizen of the United States can instantly transfer his citizenship from one state to another." *Hawes,* 598 F.2d at 701. Bank One can derive no added support for its position that Montle remained a Massachusetts domiciliary until after July 30, 1990, merely from the fact that Montle may have sought to defeat diversity jurisdiction by beating a hasty exit from Massachusetts.

V.

We conclude that the affidavits presented to the district court provided an insufficient basis for the court to have found that Bank One carried its burden of proving the existence of diversity jurisdiction on July 30. Yet, we are not satisfied, either, to hold that Montle wins the day. Bank One's affidavits, while not disproving Montle's claim to a pre-July 30, 1990 Texas domicile, raise doubts as to the credibility of that claim. We think further probing was required rather than a determination of jurisdiction based upon what must be regarded as a sterile, unsatisfactory and uninformative record. We accordingly remand for further factual inquiry below, while we retain appellate jurisdiction.

Bank One cites our decision in *O'Toole* as requiring that we affirm the district court's ruling in this case. In *O'Toole* we affirmed the district court's dismissal for lack of jurisdiction. In so doing we rejected appellants' claims to an evidentiary hearing on the basis that one was never requested below and that "the court was under no obligation to require an evidentiary hearing." *O'Toole*, 681 F.2d at 98. *O'Toole*, however, is distinguishable from the present case in several respects. First, in *O'Toole* the evidence available from which the court could make a judgement as to its jurisdiction was much more substantial than the evidence before the court in this case.[4]

Second, in *O'Toole*, we were called upon to review the district court's *dismissal* for lack of jurisdiction on the basis of no diversity. We affirmed holding that "[t]he paucity of appellants' presentation of evidence justifies the district court's conclusion that they had not met [their] burden." *Id.* This is consistent with the notion that federal courts are courts of limited jurisdiction and the corollary presumption against diversity jurisdiction. 1 *Moore's Federal Practice*, ¶ 0.71[5] at 735. Here, in contrast, we are reviewing a district court's finding that diversity exists. Consistent with the presumption against diversity jurisdiction, we are less willing to affirm a court's finding that diversity exists where, as here, the jurisdictional facts supporting the existence of diversity are so exceedingly sparse. *See Mansfield, Coldwater & Lake Michigan Ry. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884) ("[t]he rule, springing from the nature and limits of the judicial power of the United States, is inflexible and without exception which requires this court ... to deny its own jurisdiction, and, ... that of all other courts of the United States, in all cases

where such jurisdiction does not affirmatively appear in the record on which it is called to act.").

Finally, the particular circumstances in this case increase our reluctance to apply a liberal rule of jurisdiction. Specifically, the party invoking jurisdiction, Bank One, was a citizen of Texas. If Bank One's efforts to get into federal court fail, all that will occur is that a Texas bank will be forced to enforce a right arising under Texas law in a Texas state court. In *Caso v. Lafayette Radio Electronics Corp.*, 370 F.2d 707, 710 (1st Cir.1966), we observed that

> the historic primary function of the diversity jurisdiction—to provide a "neutral" forum for the out-of-state litigant who fears that the state court may be unduly, if unconsciously and inarticulately, solicitous for the interests of its own citizens—hardly supports a liberal rule of jurisdiction where, as here, the plaintiff is a citizen of the forum state seeking to enforce a substantive right arising solely from state law.

Nonetheless, we are unwilling simply to rule that Montle is correct in his claim that jurisdiction does not exist. Bank One's affidavits do not establish jurisdiction, but they raise serious doubts as to the veracity of Montle's sworn statement that he had abandoned his Massachusetts residence in May. Given these doubts and the jurisdictional nature of the issue, we are not content to leave matters hanging.

### VI.

As the parties' affidavits relating to the diversity of citizenship issue failed satisfactorily to resolve the jurisdictional facts while raising a troubling issue of credibility, we direct the district court to conduct further inquiry into the relevant jurisdictional facts and make further findings

---

**4.** Appellants in *O'Toole* attempted to invoke diversity jurisdiction, claiming they were citizens of Florida, not Massachusetts, where appellees were domiciled. In support of their claim, appellants submitted an affidavit in which they alleged that they had purchased a condominium in Florida with the intention to live there, had in fact made it their domicile and had registered to vote in Florida—all before they filed suit.

*O'Toole*, 681 F.2d at 97. Appellees countered presenting evidence that appellants rented an apartment and kept a car in Massachusetts; were sole officers of three nursing homes in Massachusetts and were known to reside in Massachusetts by their bank official. *Id.* Appellees also presented evidence that appellants filed corporate reports in Massachusetts listing Massachusetts as their domicile. *Id.*

thereon. Additional evidence should be secured in whatever expeditious manner the district court determines—whether by evidentiary hearing, discovery, further affidavits, or any combination of these, or by other means. The court's inquiry should be completed, and its new findings and rulings as to the existence or nonexistence of diversity jurisdiction concluded, within no more than 90 days from the date of this order. The district court shall thereupon certify these findings and rulings to the Clerk of this court. We shall, meanwhile, retain jurisdiction of the appeal pending receipt of the court's findings and rulings, and shall rule thereon after their receipt.

*So ordered.*