Miguel DELGADO ORTIZ,
et al., Plaintiffs,

v.

E. Glenn IRELAN, Defendant.

Civ. No. 92–1833(PG).

United States District Court,
D. Puerto Rico.

July 16, 1993.

Judith Berkan, Río Piedras, P.R., Rosalinda Pesquera, Hato Rey, P.R., for plaintiffs.

Raymond E. Morales, Goldman Antonetti Cordova & Axtmayer, San Juan, P.R., for defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Three issues are presently pending in this case: (i) is there diversity of citizenship amongst the parties?[1]; (ii) is the New York Department Stores an indispensable party to this action?; and (iii) should plaintiffs' attorney be sanctioned pursuant to Fed.R.Civ.P. 11 for failing to file certain documents under seal as stipulated by the parties?

### I. Background

This is an action for monetary damages and declaratory relief brought by two former employees. and a former officer of the New York Department Stores ("NYDS") against the current president of said company, Mr. E. Glenn Irelan ("Mr. Irelan" or "defendant"). The plaintiffs allege that their respective damages stem from illegal discharges from their positions by Mr. Irelan for reasons based on national origin and age.

### II. Diversity jurisdiction

Plaintiff, Miguel Delgado Ortiz, a citizen of Puerto Rico, alleges in the complaint that the defendant, Mr. Irelan, although physically present in Puerto Rico since September of 1991, was nonetheless a citizen of Virginia at the time of filing the complaint—June 23, 1992.[2] The defendant, on the other hand, alleges that he became a citizen of the Commonwealth[3] before said date, therefore diversity of jurisdiction is lacking. Following a somewhat woeful discovery period and the taking of the defendant's deposition, both sides to this litigation filed thoroughgoing motions and memoranda in support of their respective positions. See Defendant's Motion to Dismiss (docket # 14); Plaintiff's Opposition (docket # 33); and Defendant's Reply (filed under seal) (docket # 37). The second and third of these motions are a blow-by-blow reply to the previous motion filed by the opposing party.

### A.

■ For purposes of establishing diversity jurisdiction under 28 U.S.C. § 1332(a)(1), a person is deemed a citizen of the state in which he is domiciled. *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 49 (1st Cir.1992) (citations omitted). Domicile is determined as of the time the lawsuit is filed. *Id.*

■ Once challenged, the party invoking diversity jurisdiction has the burden of proving by a preponderance of the evidence the facts supporting jurisdiction. *Id.* at 50 (cita-

---

1. Although plaintiffs in the amended complaint have stated a federal claim under 42 U.S.C. § 1981, the Court shall nonetheless proceed to make this determination in case said federal claim is later dismissed.

2. Coplaintiffs, Sara de La Vega Ramos and Kenneth Barreto Ramirez, joined this action via the amended complaint filed on November 20, 1992 (docket # 20). These two individuals are also citizens of Puerto Rico.

3. Pursuant to 28 U.S.C. § 1332(d), Puerto Rico, although a "Commonwealth," is deemed a state for purposes of diversity jurisdiction.

tions omitted).[4] A person's domicile is presumed to continue until it is shown to have been changed. *Id.* In order to change one's domicile, one must be (i) present in the new domicile and (ii) have an intent to remain there. *Id.*

■ The principal factors to be considered in determining a natural person's intent to make a given jurisdiction his or her new domicile are: (i) the person's place of voting; (ii) the location of the person's real and personal property; (iii) the state issuing the person's driver's license; (iv) the state where the person's bank accounts are maintained; (v) club or church memberships; and (vi) the person's place of employment. *Id.* Other factors may also be taken into consideration.

■ As a general rule, no single factor is wholly controlling in determining whether diversity exists. Rather, a court must make such determination on a case by case basis. Since Mr. Irelan was present in Puerto Rico at the time the complaint and amended complaint were filed, this Court need only determine whether prior to said dates he had the intent to make the Island his place of domicile. The Court shall thus examine the evidence presented by the parties in light of the previously stated factors and any other relevant additional ones.

### B.

In the case at bar, the first factor, *place of vote,* does not weigh either in favor or against diversity. The fact that defendant did not vote in the mainland after having done so on every occasion after he became legally authorized to vote indeed suggests that he intended to become a resident of the Commonwealth. However, his sworn allegation that he did not vote in Puerto Rico because *he believed* he missed the registra-

tion deadline, also leads the Court to make the opposite inference. Had he truly wished to vote in Puerto Rico, he would have at least fully inquired into the matter rather than rest on his personal belief.

The second factor, *the situs of his real and personal property* also does not tip the balance on either side. True, Mr. Irelan still owns a large home in Williamsburg, Virginia which recently has undergone some redecoration. True, the home has not yet been placed on the real estate market. These factors however, in and of themselves, do not evince an *animus* to return to Virginia. The opposite also holds true. The fact that Mr. Irelan currently lives in a large apartment in Puerto Rico, does not, in and of itself, evince an *animus* to remain in Puerto Rico. It is not inconceivable that a person of Mr. Irelan's present economic standing have two residences in different states.[5] Of course, only one of these two states may be his domicile.

Regarding his personal property, the fact that plaintiff at this stage has left most of his personal property in Virginia would normally weigh against his acquiring a new domicile. However, as he points out, it is not unreasonable that he leave most of his belongings in Virginia so for his wife and son to use them. Notwithstanding, he has brought some belongings such as works of art, sports and electronic equipment to his furnished Puerto Rico apartment.[6]

The third factor, *the state issuing the person's driver's license,* weighs sharply in favor of diversity as Mr. Irelan still maintains his Virginia driver's license.

The fourth factor, *the state where the defendant's bank accounts are found* also weighs somewhat in favor of diversity. Mr. Irelan has three bank accounts, one in Puerto Rico and two in Virginia. In the local one

---

4. Nonetheless, the party challenging the existence of diversity jurisdiction has the initial burden of production. Once this burden is met, the ultimate burden of proof then rests on the party invoking diversity jurisdiction. *Id.*

5. It is also not inconceivable that his wife and son remain in their Virginia home so as for the latter to attend a local junior college for a year, after not being accepted at any of the four year colleges he applied to. Furthermore, this Court,

unlike plaintiff's counsel, will not question the family's personal decision to have their son—a resident of Virginia—attend a state school rather than have him enroll in one of the Island's english-speaking university programs.

6. He has also purchased a homerenter's insurance policy with a $20,500.00 liability limit towards personal property.

his NYDS paychecks are deposited. He also maintains a second one—a joint bank account with his wife—in Virginia. This is not unreasonable as she is still residing there. However, Mr. Irelan opened a third account in Virginia in August, 1992—almost one year after he arrived in Puerto Rico. He refers to the same as his "buffer" account. Although it is not unusual for a person to have a "buffer" account, it seems somewhat odd for a person who intends to make a new state his domicile to open such account in his former state of domicile.[7]

The fifth factor, the location of the defendant's *church memberships* weighs a small bit against diversity. Since his arrival in Puerto Rico, Mr. Irelan has attended the Stella Maris Parish in Condado and has made contributions thereto on a weekly basis.[8]

The defendant's *place of employment* weighs against diversity as he works on the Island.

Two additional factors sharply weigh in favor of diversity. First, Mr. Irelan has not received any type of health care while on the Island. Rather, he has continued to visit on several occasions his dentist and optometrist in Virginia.

Second, and of even greater importance to the Court is the fact that although Mr. Irelan stated that he would claim residency status on the 1992 Puerto Rico income tax form, he has nonetheless failed to submit a copy thereof to the Court. The absence of such evidence leads the Court to ask whether he indeed did so, or whether he instead filed a Virginia or federal tax form claiming residency in a place other than Puerto Rico.[9]

### C.

After considering the evidence before it in light of the above discussed factors, the Court concludes that the defendant has not abandoned his Virginia domicile. The voting, property situs and club factors do not tip the scale on either side. The church and place of employment factors tip it on the defendant's side. However, the remaining factors predominate in favor of diversity: (i) the defendant still keeps a Virginia driver's license even though he has been in Puerto Rico for over one year; (ii) he chose to open a "buffer" bank account in Virginia rather than in Puerto Rico; (iii) he has continued receiving health care in Virginia; and most important, (iv) his 1992 tax return form(s) have not been presented to the Court.

### III. *NYDS an Indispensable Party?*

The defendant contends that the NYDS is an indispensable party to this action, thus must be made a part thereof pursuant to Fed.R.Civ.P. 19(b). As a consequence, complete diversity amongst the parties will be destroyed, therefore depriving the Court of subject-matter jurisdiction. The Court disagrees.[10]

 Plaintiffs' Commonwealth based causes of action against Mr. Irelan are premised on 29 L.P.R.A. § 146 [11] and Article 1802

---

**7.** This seems even more perplexing in the instant case, where defendant himself has stated in an affidavit that his son will leave the state of Virginia to attend a four year college and that he would like his wife to spend a great deal of time on the Island, reason for why he rented a large apartment.

**8.** His *club memberships*, however, do not tip the balance on either side. His Banker's Club membership in Puerto Rico originally belonged to his predecessor at the NYDS, thus is not indicative of his desire to become a member of a Puerto Rico club. Regarding his Kingsmill Resort membership in Virginia, it is not unreasonable that he keep it so as for his family to use while they remain there. Regarding his continued membership in a Washington, D.C. club, this one may not be weighed one way or another as it also

enables him to use the golf facilities at the Palmas Del Mar club in Humacao, Puerto Rico.

**9.** In his 1991 Puerto Rico tax form, the defendant stated that he was not a Puerto Rico resident. This, if he presented a 1992 Puerto Rico tax form claiming residency in the Commonwealth, would be of no adverse weight against him, as he was only in the Island for four months in 1991. However, in the absence of a 1992 tax form, it does weigh in favor of diversity.

**10.** This holding applies equally to the newly joined plaintiffs.

**11.** 29 L.P.R.A. § 151 defines "employer" for purposes of § 146 as the chief, official, manager, officer, managing partner, administrator, superintendent, foreman, overseer of a corporation.

of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141. Pursuant to the doctrine of *respondeat superior* either the NYDS and/or Mr. Irelan may respond for the alleged damages to plaintiffs.[12] The inclusion of both Mr. Irelan and the NYDS—joint tortfeasors—as defendants in this federal lawsuit is thus not mandatory, but rather permissive. *See Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, A Partnership v. Medfit International, Inc.,* 982 F.2d 686, 691 (1st Cir.1993) (citing *Temple v. Synthes Corp., Ltd.,* 498 U.S. 5, 7, 111 S.Ct. 315, 316, 112 L.Ed.2d 263 (1990)). It is true of course, that plaintiffs could have alternatively filed a complaint in Superior Court premised on these same causes of action against Mr. Irelan and the NYDS as codefendants, or solely against the NYDS.[13] However, as "masters of their complaint", plaintiffs have the right to select the defendants they wish to sue and the forum in which to bring their action.[14]

### IV. Rule 11 Sanctions

 The defendants request that Attorney Judith Berkan be sanctioned for failing to comply with a stipulation regarding the confidentiality of discovery proceedings by failing to file her opposition to defendant's motion to dismiss under seal. Attorney Berkan does not dispute her noncompliance with said stipulation. Rather, she states that it was the result of her own negligent oversight due to work and personal pressures. She asks for the Court's excuse and concedes to the imposition of a small monetary sanction imposed exclusively on her if the Court deems the same to appropriate. She has also filed a motion requesting that her motion and supporting documentation be placed under seal.

In view of the facts that the undersigned has had the entire case file in his chambers for some time, and that no allegation of prejudice to the defendant has been made, this Court shall not impose any sanction on Attorney Berkan this time.

### V. Conclusion

In view of the above,

1. The defendant's motion to dismiss and reply to the plaintiff's opposition (docket #s 14, 37) are hereby **DENIED**.

2. The plaintiff's motion in opposition to the defendant's motion to dismiss (docket # 33) is hereby **GRANTED**.

3. The defendant's motion requesting sanctions (docket # 34) is hereby **DENIED**.

4. The plaintiff's opposition to plaintiff's motion requesting sanctions and motion requesting placement under seal (docket # s 35, 36) are hereby **GRANTED**.

5. The Clerk of Court shall place the plaintiff's motion in opposition to defendant's motion to dismiss and all attached exhibits (docket # 33) **UNDER SEAL**.

**IT IS SO ORDERED.**

---

Thus § 146 is clearly applicable against Mr. Irelan.

**12.** Puerto Rico law makes no distinction between joint tortfeasor liability and *respondeat superior* liability. *See* II Brau del Toro, *Los Daños y Perjuicios Extracontractuales en Puerto Rico* 517–18 (Publicaciones J.T.S. 1986) (discussing Puerto Rico Supreme Court jurisprudence).

**13.** The Court notes that the New York Supreme Court, pursuant to a clause in the employment agreement entered between the NYDS and co-plaintiff Delgado Ortiz, ordered that an arbitration hearing between these two parties be held as to Delgado Ortiz's discrimination claim.

**14.** The defendant of course may bring the NYDS as a third party defendant to this lawsuit pursuant to Fed.R.Civ.P. 14(a).