312 F.Supp.2d 143 (2004)
Olga TAÑON Plaintiff
v.
Rafo MUÑIZ, et al. Defendants
No. CIV. 01-2624(SEC).
United States District Court, D. Puerto Rico.
March 31, 2004.
*144 *145 *146 Celina Romany-Siaca, Esq. and Juan M. Frontera-Suau, Esq., San Juan, PR, for Plaintiff.
Judith Berkan, Berkan & Méndez, San Juan, PR, for Defendants.

OPINION AND ORDER
CASELLAS, District Judge.
Pending before the Court is Defendants' motion to dismiss due to lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and request for attorney fees and costs (Docket # 56). Defendants' assert that there is absence of diversity among the parties and hence the Court lacks jurisdiction to entertain the above captioned claim. Plaintiff has filed an opposition to said motion (Docket # 57), Defendants have replied (Docket # 68) and Plaintiffs have in turn sur-replied (Docket # 71). After a lengthy and careful review of the parties' arguments, the submitted documents and the applicable law, Defendants' motion will be GRANTED as to the dismissal of the claim and costs and DENIED as to the attorneys' fees.

Background
This action was brought by Olga Tañón, a renowned Puerto Rican singer and composer, against her former manager, Rafo Muñiz, his wife, and his company, Promotores Latinos. Ms. Tañón, who is the owner of homes both in Orlando, Florida, and Puerto Rico, has alleged breach of contract, as well as general tort allegations. Subject matter jurisdiction was founded on 28 U.S.C. § 1332, based on the assertion that Ms. Tanon was a "resident" of Florida, and therefore purportedly "diverse" with respect to the Defendants, residents of Puerto Rico.
The original action was filed on November 28, 2001 (Docket # 1), with considerable publicity attendant thereto, in light of the public figures involved. Shortly thereafter, Ms. Tañón amended the complaint for the first time (Docket # 2). On December 19, 2001, she filed a Second Amended Complaint (Docket # 12), after which the Defendants were finally served with process. Ms. Tañón modified the complaint yet again on June 14,2002, when she filed a "Supplemental Pleading," eliminating the cause of action in tort, as well as all of the "defamation" language which had been asserted in the three previous versions of the complaint (Docket # 48).

Standard of Review
In general terms, a defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). In this type of jurisdictional challenge, "the standard applied to a 12(b)(1) motion is similar to the standard applied to a 12(b)(6) motion, namely, the court must take all of plaintiff's allegations as true and must view them, along with all reasonable inferences therefrom, in the light most favorable to plaintiff." Pejepscot Indus. Park v. Maine *147 Cent. R.R., 215 F.3d 195, 197 (1st Cir.2000); Freiburger v. Emery Air Charter, Inc., 795 F.Supp. 253, 257 (N.D.Ill., 1992). See also Hart v. Mazur, 903 F.Supp. 277 (D.R.I.1995) ("Motions under Rule 12(b)(1) and Rule 12(b)(6) are subject to the same standard of review.") However, once the jurisdictional challenge has been raised, the plaintiff carries the burden of demonstrating the existence of the Court's jurisdiction. Puerto Rico Tel. v. Telecom. Regulatory Bd., 189 F.3d 1, 7 (1st Cir.1999).
In assessing whether dismissal is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). But "[a]lthough this standard is diaphanous, it is not a virtual mirage." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir.1997) citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir.1988). In order to survive a motion to dismiss, "a complaint must set forth `factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.' "Id. In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and `bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle, 142 F.3d at 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)). See also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir.1999). Courts, moreover, "will not accept a complainant's unsupported conclusions or interpretations of law." Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir.1993).

Applicable Law and Analysis
Federal courts "are not at liberty to overlook limitations on their subject matter," Francis v. Goodman, 81 F.3d 5, 8 (1st Cir.1996), but rather are required to strictly construe those statutes which grant their jurisdiction, Garcia-Perez v. Santaella 208 F.Supp.2d 200, 203 (D.P.R.2002). See also Alicea-Rivera v. SIMED, 12 F.Supp.2d 243, 245 (D.P.R.1998). In cases in where diversity of citizenship is the sole basis for invoking subject matter jurisdiction, without a preponderance of the evidence establishing diversity, the district court would lack judicial power to adjudicate the controversy. Francis, 81 F.3d at 6.
In the case at hand, Plaintiff has invoked the Court's jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Diversity jurisdiction requires complete diversity between all plaintiffs and all defendants. See Casas Office Machines v. Mita Copystar America, Inc., 42 F.3d 668, 673 (1st Cir.1994). Defendants have challenged Plaintiff Tañón's jurisdictional allegations; accordingly, Plaintiff bears the burden of proving, by a preponderance of the evidence, the facts supporting jurisdiction. Bank One v. Montle, 964 F.2d 48, 50 (1st Cir.1992); O'Toole v. Arlington Trust Co., 681 F.2d 94, 98 (1st Cir.1982); Garcia-Perez, 208 F.Supp.2d 200; Palermo v. Abrams, 62 F.Supp.2d 408, 410 (D.P.R.1999) Casellas, J. ([t]he party invoking subject matter jurisdiction must support its allegation of jurisdiction by "competent proof").
The First Circuit has counseled district courts to give the parties a hearing and conduct discovery prior to its ruling on the existence of subject matter jurisdiction, or lack thereof. Bank One, 964 F.2d. *148 at 52 (citing Williamson v. Tucker, 645 F.2d 404, 414 (5th Cir.1981)). However, although a hearing may be appropriate, it is not necessarily required. Valentin v. Hospital Bella Vista, 254 F.3d 358, 364 (1st Cir.2001). In the instant case the parties have extensively discussed the jurisdictional issue through their respective motions, they have also conducted exhaustive discovery regarding the facts related to the alleged diversity of Plaintiff and they have presented the court with hard evidence such as tax returns, driver's license and depositions. Accordingly, the Court feels that it has been placed in a well informed position regarding the jurisdictional issue and that the holding of a hearing is not warranted since it would be a time consuming process that would add little to the discussion.
"For federal jurisdictional purposes, diversity of citizenship must be established as of the time of suit." Valentin, 254 F.3d at 361 (citing Bank One, 964 F.2d at 49). Accordingly, the critical date here is November 28, 2001, the date on which Plaintiff filed her complaint. Plaintiff's jurisdictional argument hinges on her contention that she was a resident of the state of Florida for diversity purposes when she filed suit. Defendants contend that, on the date the suit was filed, although Plaintiff had a residence in Orlando, Florida, she was still domiciled in Puerto Rico.
Diversity jurisdiction exists when the claims in the complaint are between citizens of different states and when the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1322(a). It is hornbook law that when federal jurisdiction is based on diversity of citizenship, complete diversity must exist between the adverse parties in the action. That is, the citizenship of each plaintiff must be diverse from that of each defendant. See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373-74, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 829, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989); Soler v. P.R. Telephone Co., 230 F.Supp.2d 232, 234 (D.P.R.2002) (citing Owen Equip. and Newman-Green). Moreover, the existence of diversity jurisdiction must be evident on the face of the complaint in order for a federal court to assume jurisdiction. Fifty Associates v. Prudential Insurance Co. of America, 446 F.2d 1187 (9th Cir.1970); Soler, 230 F.Supp.2d at 234.
For purposes of diversity jurisdiction, citizenship is usually equated with domicile. Valentin, 254 F.3d at 366. This concept, of course, is distinct from that of "residence." While a party may have more than one residence, he/she can only have one domicile. Bank One, 964 F.2d at 53; see also, Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 701 (1st Cir., 1979). Mere residence is insufficient to determine a party's jurisdictional status. Palermo, 62 F.Supp.2d at 409.
A person is a citizen of the state in which he is domiciled. Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir.1991). Domicile generally requires two elements: (1) physical presence in a state, and (2) the intent to remain there indefinitely (animus manendi) Kidd v. Hilton of San Juan, Inc., 251 F.Supp. 465 (D.P.R.1966). Valentin, 254 F.3d at 366. A person's domicile is the "place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning."(animus revertendi) Id. (citing Rodriguez-Diaz v. Sierra-Martinez, 853 F.2d 1027, 1029 (1st Cir.1988)).
It is not required that the intention to stay there be permanent, however, there is a firm and well recognized *149 presumption of continuing domicile. Bank One, 964 F.2d at 50. A plaintiff maintains his domicile until it can be proven, by clear and convincing evidence, that he/she has changed it. Id., Alicea-Rivera v. Sindicato De Aseguradores, 12 F.Supp.2d 243, 245 (D.P.R.1998), Palermo, 62 F.Supp.2d at 410. However, it is important to note that "[w]hile one's statements may supply evidence of the intention requisite to establish domicile at a given place of residence, they cannot supply the fact of residence there... and they are of slight weight when they conflict with the fact." State of Texas v. State of Florida, 306 U.S. 398, 425, 59 S.Ct. 563, 83 L.Ed. 817 (1939).
To ascertain a person's domicile (particularly if there is evidence that a party's domicile is unclear), the Court must focus on the party's intent. Palermo, 62 F.Supp.2d at 410. The analysis calls for a "totality of the evidence" approach, and no single factor is conclusive. Id. There are no hard and fast rules for determining who is "domiciled" in a state for purposes of diversity jurisdiction. Some of the factors traditionally considered when determining a party's domicile are: (1) the person's place of voting; (2) the location of the person's real and personal property; (3) the state issuing the person's driver's license; (4) the state where the person's bank accounts are maintained; (5) club or church membership; and (6) the person's place of employment. Lundquist v. Precision Valley Aviation, 946 F.2d 8, 11 (1st Cir.1991); Palermo, 62 F.Supp.2d at 410 (citing Bank One, 964 F.2d at 50). The determination of domicile is a mixed question of law and fact. Id. Other factors may also be taken into consideration. As a general rule, no single factor is wholly controlling in determining whether diversity exists rather a court must make such determination on a case by case basis. Delgado Ortiz v. Irelan, 830 F.Supp. 68, 70 (D.P.R.1993). Since the presumption is that domicile remains the same until proven otherwise by clear and convincing evidence and inasmuch as Plaintiff argues that she changed her domicile to Orlando, Florida, the Court will examine whether Plaintiff changed her domicile to Florida on or before November 28, 2001, the date the Complaint was filed.
In the case at hand, Plaintiff has produced concrete evidence indicating that she held a Florida driver's license, owned a vehicle registered in Florida, her daughter was enrolled in a Orlando school and she received speech therapy in her residence in Orlando and that, she held memberships for a wholesale and a YMCA club located in Orlando. Additionally, Plaintiff has also submitted documents indicating that she receives mail in her Orlando residence and has to pay property taxes on said residence. Nevertheless, other factors such as another residence, other property, tax returns, bank accounts, place of business, and Plaintiff's own statements point strongly to Puerto Rico as the place of domicile.
From the other documents submitted to the Court and Plaintiff Tañón's deposition it clearly appears that she lacked the intent to change her domicile to Florida. Most notably:
1) She never sold her residence in Puerto Rico nor rented it.
2) Plaintiff maintained personal and business bank accounts with a bank in Puerto Rico, which she used on a regular basis to pay her debts.
3) She indicated that she traveled to Puerto Rico almost every weekend after her daughter's school lets out and whenever she has vacation or holiday breaks.
4) The time she spends in Orlando depends mainly on her daughter's school schedule.

*150 5) Plaintiff filed personal income tax returns as a Puerto Rico resident in 1998, 1999 and 2000.
6) Plaintiff filed a federal foreign tax credit form in 2000 indicating she was a resident of Puerto Rico.
7) Ms. Tañón stated in her deposition that the reason why she has gone to Orlando is to seek treatment for her daughter's condition and that she tries to spend most of her time in Puerto Rico.
8) Plaintiff conducts all of her professional business through a corporation entitled "Olga Tañón Music, Inc.," whose office is located in Guaynabo, Puerto Rico.
9) She also owns a vehicle in Puerto Rico.
As to Plaintiff's 2001 Puerto Rico tax return there is no conclusive evidence on record indicating that Plaintiff filed her return as a non-resident. On September 16, 2002, Plaintiff filed a motion informing the Court that she had provided Defendants with copies of her tax returns for the year 2001 for both Puerto Rico and the Internal Revenue Service (IRS) (Docket # 59). The Court notes that said documents were allegedly requested by Defendants during Plaintiff's deposition in June 2002. Plaintiff has not challenged this.
The documents submitted by Plaintiff are non-official copies of her tax returns for the year 2001. Defendants contend that these documents contain abnormalities that highly call in to question the evidentiary value of the returns (Docket # 60). The Court has examined the documents and the allegations raised by Defendants, and has reached the following findings regarding Plaintiff's 2001 tax returns:
1) Both returns are dated in August 2002, more than two months after Plaintiff's deposition and in excess of four months after the tax filing deadline[1];
2) Both returns lack evidence indicating that they were indeed filed with the corresponding authorities. We note that the documents do not have a "received or filed" stamp on them nor is there is a U.S. mail return receipt or messenger receipt indicating that said documents were in fact sent and received;
3) The IRS form is dated August 31, 2002 and was sent on September 5, 2002, as indicated by certified mail receipt, just one day after Plaintiff filed her opposition to Defendants' motion to dismiss;
4) The Puerto Rico return is dated August 26, 2002 which is two days prior to the filing of Defendants' motion and two months after Plaintiff's deposition;
5) The Puerto Rico tax return lists Plaintiff's P.O. Box in Levittown, Puerto Rico as her postal address, the box for stating the residential address has been left blank, and the return clearly indicates that there has been no change in address and;
6) The Puerto Rico tax return appears to be incomplete since it lacks Plaintiff's birth date, residential or office telephone number, the dates involved in the return and, the required annex "Anejo A1 Individuo" for individuals alleging tax exemptions due to dependents.
To this date, Plaintiff has not provided the Court with any supplemental documents that would clarify these abnormalities. In fact, Plaintiff's counsel has admitted that at the time she submitted the documents related to Ms. Tañon's 2001 Puerto Rico tax return said documents were not official since they had not been *151 filed but that Plaintiff would be filing them as a non-resident. See Docket # 70 at pp. 6 & 17. In addition, Plaintiff does not contest Defendants' allegation that, at the time of the complaint, Plaintiff had ever filed her Puerto Rico tax return as a non-resident, See Docket # 70 at p. 17, although Plaintiff's counsel had previously alleged that Ms. Tañón has consistently filed Puerto Rico tax return as a non-resident, See Docket # 57 at p. 15.
In the case at bar, Plaintiff has not met her jurisdictional burden. We first note that the complaint before this court does not even allege that Ms. Olga Tañón is a "citizen" of the state of Florida as required under the diversity statute since the complaint limits itself to an assertion concerning her "residence." See, paragraph 3 of the Second Amended Complaint. With regard to this issue we quote from Soler v. P.R. Telephone Co., 230 F.Supp.2d at 234:
In the complaint the plaintiffs explicitly asserted subject matter jurisdiction upon diversity of citizenship statute. However, the complaint is devoid of any allegation as to the citizenship of the defendant. Not only is this a violation of rule 8 of the Fed. R. Civ. Proc., but the plaintiffs' naked allegations of diversity of citizenship are insufficient to confer diversity jurisdiction upon this Court.
See also, Alvarez Melendez v. Citibank, 705 F.Supp. 67 (D.P.R.1988); Kussmaul v. Peters Const. Co., 563 F.Supp. 91 (D.R.I.1983). Moreover, the facts, as testified to by Plaintiff under oath, show that she physically resides in Florida "one half" of the time or less, and that she returns to Puerto Rico every chance she gets, including most weekends. Virtually all of the other indicia of citizenship (property ownership, tax status, bank accounts, business place) are to be found not in Orlando, Florida, but rather in Puerto Rico. According to her own testimony, moreover, she has no "intention" to remain permanently in the state of Florida. Plaintiff's deposition is inconsistent with the animus manendi required that would establish that Plaintiff in fact had an intention to remain in Florida. However, the preponderance of the evidence presented does demonstrates a animus revertendi toward Puerto Rico. The facts, as testified to by Plaintiffs under oath, as well as the evidence presented, demonstrate that Plaintiffs did not intend to make Florida her home. Accordingly, Defendant has proffered sufficient evidence to establish that Plaintiff did not change her domicile to Florida, and Plaintiff has failed to rebut this evidence with clear and convincing proof that her domicile changed to Florida on or before November 28, 2001. In addition, although not solely controlling, the fact that, at the time of the complaint, Plaintiff had not filed a Puerto Rico tax return as a non-resident further tips the scale towards a continuing domicile in Puerto Rico. Therefore, on these facts, the Court is unable to conclude that, on the filing date in question, Plaintiff was domiciled in Florida.
We reiterate that "[w]ithout a preponderance of evidence establishing diversity the district court [lacks] judicial power to adjudicate this controversy under § 1332(a)(1)." Francis, 81 F.3d at 6 (1st Cir.1996). We conclude, therefore, that Plaintiff was still domiciled in Puerto Rico when she filed this suit. In as much as Defendants are also domiciled in Puerto Rico, there is no complete diversity among opposing parties and the Court lacks jurisdiction to entertain this action pursuant to 28 U.S.C. § 1332. Therefore, Plaintiff's claim will be DISMISSED WITHOUT PREJUDICE.

Attorneys' Fees and Costs
It is well-settled law that the courts "are free to pursue a case-by-case *152 approach and to make their decisions on the basis of the circumstances and equities on each case, including matters as the efforts and the expenses of the parties." Wright, Miller & Kane, Federal Practice and Procedure, Civil 2d, § 2668, p. 200; Heddinger v. Ashford Memorial Community Hosp., 734 F.2d 81, 86 (1st Cir.1984). Furthermore, Rule 54(d) of the Federal Rules of Civil Procedure reads: "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs"(emphasis added).
Since this case was brought pursuant to this Court's diversity jurisdiction, the imposition of attorneys' fees is governed by P.R. R.Civ.P. 44.1; P.R. Laws Ann. tit. 32, App. III, R. 44.1 (1983) (Pocket Supp.1997). Dopp v. Pritzker, 38 F.3d 1239, 1252 (1st Cir.1994); Newell Puerto Rico, Ltd. v. Rubbermaid Inc., 20 F.3d 15, 24 (1st Cir.1994) ("Puerto Rico Rule 44.1(d) on attorneys' fees and 44.3(b) on pre-judgment interest are rules of decision that should be applied by the Federal Court sitting in diversity.") (citations omitted); De Leon Lopez v. Corporacion Insular de Seguros, 931 F.2d 116, 126 (1st Cir.1991).
P.R. R.Civ.P. 44.1(d) provides that: "In the event any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorneys' fees which the court decides corresponds to such conduct." The main purpose of this rule is simply "to impose a penalty upon a losing party that because of his stubbornness, obstinacy, rashness, and insistent frivolous attitude has forced the other party to needlessly assume the pains, costs, efforts, and inconveniences of a litigation." Vicente Fernandez Marino v. San Juan Cement Co., 118 D.P.R. 713, 118 P.R. Offic. Trans. 823, 830 (1987)(finding that the party that risks litigating a case in which negligence appears prima facie should thus assume liability for its actions)
Although P.R. R.Civ.P. 44.1(d) does not define the term "obstinately," this is a term of art which has been discussed at large by the courts. In particular, the Puerto Rico Supreme Court has stated that "obstinacy is an attitude which casts its shadow over the proceeding and which affects the sound operation and administration of justice. It also subjects the innocent litigant to the ordeal of the judicial process and unnecessary costs, and to retainment of professional services, including attorneys, with the usually exorbitant burden to his pocket." Id. at 829. A party shall be found obstinate if it "engages in actions which (a) make necessary litigation which could have been avoided, (b) prolongs the litigation unnecessarily, or (c) requires the other party to incur expenses in the pursuit of avoidable tasks." Newell Puerto Rico, Ltd. v. Rubbermaid Inc., 20 F.3d 15, 24 (1st Cir.1994).
Finally, in making a determination of obstinacy, the courts consider the "personality of the case," because that which constitutes obstinacy at one stage of the litigation may not be obstinate at another. At the same time, "obstinacy may be found to characterize a particular form of conduct in one case but not in another." Dopp, 38 F.3d at 1253-54. Rule 37(b)(2) of the Federal Rules of Civil Procedure, which deals with the imposition of sanctions for the failure to comply with a Court's order, states, in its pertinent part, that the Court may "require the party failing to obey the order ... to pay the reasonable expenses, including attorney's fees, caused by the failure [to comply with the order], unless the court finds that the failure was substantially justified or that *153 other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(b).
In the case at hand, we do not find that Plaintiff's litigation surmounts to a conduct that warrants the imposition of attorneys' fees since the question of the existence of diversity jurisdiction was close. Therefore, Defendants' request for attorneys' fees is DENIED. However, the Court does see fit the award of cost and expenses for the litigation of this case. Accordingly, Defendants are ORDERED to file by April 30, 2004, a Verified Bill of Costs.
SO ORDERED.
NOTES
[1] Plaintiff has not submitted any document indicating that she requested an extension of time to file her return or has she alleged a reason for the tardy filing of said documents.