# United States Court of Appeals
## For the First Circuit

No. 07-1447

RYAN PADILLA-MANGUAL,

Plaintiff, Appellant,

v.

PAVÍA HOSPITAL, ET AL.

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella and Howard, Circuit Judges,
and Smith,[*] District Judge.

Antonio Bauzá-Torres and Rubén Morales, for appellant.
Mirta Rodríguez-Mora, with whom Látimer, Biaggi, Rachid &
Godreau, were on brief for appellee Pavía Hospital, and Nuyen
Marrero-Bonilla, with whom Montijo & Montijo Law Offices, were on
brief for appellees Dr. Miguel De La Cruz and his conjugal
partnership.

February 14, 2008

[*] Of the District of Rhode Island, sitting by designation.

**SMITH**, **District Judge**. In this case, a challenge to the diversity jurisdiction claimed by a plaintiff requires us to examine the presumption of domicile and what it takes to overcome it where the plaintiff forges none of the typical ties to his new home. Ultimately, we conclude that the task is one better left to the district court, with the benefit of an evidentiary hearing.

Plaintiff-appellant, Ryan Padilla-Mangual ("Padilla"), brought an action in the United States District Court for the District of Puerto Rico against defendant-appellee Pavía Hospital, and defendants-appellees Dr. Miguel De La Cruz Castellanos and his conjugal partnership (collectively, "Dr. De La Cruz"), for damages stemming from allegedly negligent medical treatment.[1] Padilla's complaint, which was premised on Puerto Rico's general tort statute, P.R. Laws Ann. tit. 31, § 5141 (2004), alleged federal diversity jurisdiction under 28 U.S.C. § 1332. The complaint alleged that Padilla was a resident of the State of Florida.[2]

On July 17, 2006, Dr. De La Cruz moved to dismiss for

---

[1] The complaint originally named Nicole Freire (or, Freyre), Padilla's then-fiancée, as an additional plaintiff. However, she subsequently was voluntarily dismissed from the case.

[2] Although Padilla's complaint actually alleged that he was a "resident" of Florida, rather than a "citizen" or "domiciliary" of Florida, the district court's analysis of domicile moots any concern as to whether Padilla's allegations, if defective, should preclude a finding of diversity jurisdiction. See Cantellops v. Álvaro-Chapel, 234 F.3d 741, 742-743 (1st Cir. 2000) (district court's analysis of domicile reviewed for clear error even where complaint specifically alleged residency instead of domicile).

lack of subject matter jurisdiction on the grounds that diversity of citizenship was lacking.[3]  Dr. De La Cruz claimed that as of January 30, 2006, the date that Padilla filed his complaint, Padilla actually was a domiciliary of Puerto Rico, not Florida.  On October 3, 2006, Pavía Hospital moved for summary judgment on Padilla's claims, also arguing that the district court lacked diversity jurisdiction.  The district court granted both motions in a single order on February 1, 2007, without holding an evidentiary hearing.  Padilla timely filed this appeal.  While the district court's analysis ultimately may prove to be correct, because we find that the record has not been adequately developed, we reverse and remand for an evidentiary hearing on the question of diversity of citizenship.

Federal jurisdiction based on diversity of citizenship requires that the matter in controversy be between citizens of different states.  28 U.S.C. § 1332(a)(1) (2006).  For purposes of diversity, a person is a citizen of the state in which he is domiciled.  Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991); Rodríguez-Díaz v. Sierra-Martínez, 853 F.2d 1027, 1029 (1st Cir. 1988); Valedón Martínez v. Hospital

---

[3] Dr. De La Cruz's motion also requested that the district court abstain from deciding the action based on the abstention doctrine set forth in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).  The district court did not discuss the issue of abstention in light of its decision to dismiss the complaint for lack of diversity jurisdiction.

-3-

Presbiteriano de la Comunidad, Inc., 806 F.2d 1128, 1132 (1st Cir. 1986).  "A person's domicile 'is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'"  Rodríguez-Díaz, 853 F.2d at 1029 (quoting Charles Allen Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure § 3612 (2d ed. 1984)).  Domicile is determined as of the time the suit is filed.  Lundquist, 946 F.2d at 10; Valedón Martínez, 806 F.2d at 1132; Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 701 (1st Cir. 1979).

In contesting Padilla's assertion of diversity jurisdiction, the appellees point out that only four days before filing his action in the district court, Padilla filed a complaint in Puerto Rico state court, essentially making the same allegations as in his federal complaint, but alleging him to be a resident of Puerto Rico.[4]  Once challenged, "the party invoking subject matter jurisdiction [here Padilla] has the burden of proving by a preponderance of the evidence the facts supporting jurisdiction."  Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 50 (1st Cir. 1992) (citation omitted); see also Lundquist, 946 F.2d at 10 (plaintiff must support allegation of jurisdiction by "competent proof");

---

[4] The complaint filed in Puerto Rico state court on January 26, 2006, was actually an amended complaint.  The original complaint, which also alleged that Padilla was a resident of Puerto Rico, was filed on August 22, 2005.

O'Toole v. Arlington Trust Co., 681 F.2d 94, 98 (1st Cir. 1982); Hawes, 598 F.2d at 702; Lugo-Viña v. Pueblo Int'l, Inc., 574 F.2d 41, 44 (1st Cir. 1978). Padilla contended that the allegations of residency contained in his Puerto Rico pleadings were "clerical errors" and that he had, by December 31, 2004, permanently relocated from Puerto Rico to Florida.[5]

There is, ordinarily, a presumption of continuing domicile, Hawes, 598 F.2d at 701; see also Mitchell v. United States, 88 U.S. 350, 353 (1874) ("domicile once acquired is presumed to continue until it is shown to have been changed"). Because Padilla was raised in Puerto Rico and lived there until his apparent relocation to Florida, it is presumed that he was a domiciliary of Puerto Rico. To sustain his burden, Padilla was required to show two things in order to establish a change in his domicile from Puerto Rico to Florida: (1) presence in Florida, and (2) an intent to remain there. Bank One, 964 F.2d at 50; Valedón Martínez, 806 F.2d at 1132; Hawes, 598 F.2d at 701. We have stated previously that the factors relevant to determining a party's intent include:

> the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles)

---

[5] Padilla's representation that he relocated to Florida on December 31, 2004 appears to be contradicted by his own appellate brief, in which he asserts that he was flown (apparently from Puerto Rico) to the Mayo Clinic in Jacksonville, Florida, on or about January 18, 2005.

-5-

located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment.

Bank One, 964 F.2d at 50 (citation omitted).  While no single factor is controlling, some courts have presumed domicile in a state is established where a party is registered to vote.  Id. This Court has not recognized such a presumption, but we have said that the place a person is registered to vote is a "weighty" factor in determining domicile.  Lundquist, 946 F.2d at 12.

The district court's conclusion that Padilla failed to meet his burden of proving that he changed his domicile to Florida at the time he filed his federal complaint is a "mixed question of law and fact and as such may not be set aside unless clearly erroneous."  Bank One, 964 F.2d at 51; Lundquist, 946 F.2d at 11; Valedón Martínez, 806 F.2d at 1132; O'Toole, 681 F.2d at 98; Hawes, 598 F.2d at 702.  "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed."  Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (citation omitted).  Though this presents a high hurdle for Padilla, we believe it has been cleared here - if only just - and we therefore cannot sustain, on the present record, the district court's finding of a lack of diversity jurisdiction.  See Fredyma v. AT & T Network Sys., Inc., 935 F.2d 368, 370 (1st Cir. 1991)

(reversing district court judgment for error in procedure, but expressing no opinion on "ultimate viability" of complaint).

The record before us reveals that Padilla offered several pieces of evidence to show that he had changed his domicile from Puerto Rico to Florida prior to filing his federal lawsuit: (1) two declarations, one his and the other his mother's, made under penalty of perjury, that he is a resident of Florida and has no intention of returning to Puerto Rico; (2) copies of four ledgers detailing payments and charges from four different addresses in Florida where Padilla claims to have resided since January 2005;[6] and (3) a copy of a driver's license issued to Padilla on January 20, 2005, by the state of Florida. In his declaration, Padilla stated that he moved to Florida on December 31, 2004 and has never returned to Puerto Rico. He also declared that he intends to continue living in Florida, has no intention of ever returning to Puerto Rico, and that all of his personal contacts are in Florida, with the exception of his mother in Puerto Rico who provides him with financial support. Padilla's mother's declaration echoed

---

[6] As the district court noted, only one of the ledgers records Padilla as a co-tenant with Nicole Freire, Padilla's then-fiancée. Two others show only Freire as the tenant, and the fourth shows Padilla's mother as the tenant. The ledger recording Padilla as a cotenant overlaps with the date that Padilla filed his federal complaint, i.e. Padilla apparently was the cotenant of a Florida residence as of the day that he filed his federal complaint on January 30, 2006.

-7-

Padilla's claims and clarified that she pays all of Padilla's expenses since he is unable to work or study.[7]

Based on these submissions, as well as the Puerto Rico state court pleadings alleging that Padilla was a domiciliary of Puerto Rico, the district court found that, "[g]iven the totality of the circumstances, the Court simply cannot find that Padilla has established his domicile in Florida for diversity purposes." The district court reasoned that, ultimately, "Padilla has not shown . . . that he has taken any affirmative steps to establish a domicile

---

[7] While Padilla argued in opposition to the motion to dismiss and motion for summary judgment that his Puerto Rico pleadings contained erroneous allegations of residency, he submitted no actual evidence to support this specific claim until he submitted the declaration of his former counsel with his surreply. This relates to an additional concern that we would prefer to see alleviated before terminating Padilla's right to seek relief in a federal forum. The district court apparently granted Padilla an extension of time to February 6, 2007 to file a surreply. Nonetheless, the district court entered its judgment dismissing Padilla's complaint one day sooner, on February 5. Padilla's surreply, filed on February 6, included the declaration from his former counsel, in which counsel stated that he inadvertently copied Padilla's mother's address into the Puerto Rico pleadings, as well as additional documentation purporting to evidence Padilla's Florida domiciliary. That same day, Padilla also filed a motion for reconsideration of the district court's decision, which the district court denied on February 7. In denying the motion for reconsideration, the district court stated that it reviewed Padilla's surreply and found "no reason to change its previous ruling." We are troubled by this apparent sub silentio reversal of the district court's decision to grant Padilla the opportunity to file a surreply. It is not inconceivable that the previous day's dismissal of Padilla's complaint colored the district court's review of his surreply. We think these events support our view that the best approach is for the district court to take a fresh look at all the evidence submitted and conduct an evidentiary hearing to assess the credibility of the declarants.

in Florida." Specifically, the district court focused on Padilla's apparent failure to cultivate the sort of ties traditionally viewed as manifesting an expression of domicile:

> Padilla does not work nor has he indicated that he is looking for work in Florida. He does not go to school. He does not own or rent any real property in Florida. He does not belong to any clubs or groups, nor does he attend a church. He does not have any bank accounts. He has not registered or exercised the right to vote. Other than his driver's license and a stated desire to stay there, Padilla doesn't seem to have established any real presence in Florida.

The district court also believed it to be contradictory that Padilla stated his physical condition prevented him from working or attending school, and yet Padilla also professed to live alone and far from family, to care for himself, and to drive a car.

In other words, the district court found that Padilla's declaration was not credible because he largely had not taken the affirmative steps described in Bank One, e.g. opening a bank account or obtaining employment. However, nothing we have said in our prior decisions implies that the typical indicia of domicile are required in order to change one's domicile; rather, we have described these as examples of indicia of intent.

We recognize that the mode of proving diversity is normally left to the district court, but its discretion is not unfettered. Bank One, 964 F.2d at 51; O'Toole, 681 F.2d at 98. While the district court may rely on documentary evidence to

-9-

establish whether jurisdiction attaches, and while the same clearly erroneous standard applies to findings based thereon, the presumption that the court reached a correct result is somewhat lessened relative to findings based on oral testimony. Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 500 (1984). In Prakash v. American University, 727 F.2d 1174 (D.C. Cir. 1984), the District of Columbia Circuit, remanding for further proceedings on the question of diversity, stated:

> [i]n many instances, and perhaps in most, a party's intent will appear, at least in part, from facts established by documents. When, however, as here, a party expressly declares his intent, and the opposing written submissions do not demonstrate the falsity of the declaration with reasonable certainty, the issue necessarily becomes one of the declarant's credibility. In that event, the court cannot rest its decision simply on the paper record, but must hold a hearing in order to adequately assess credibility. Only in that way is a sound decision on intent possible.

Id. at 1180 (citations omitted); see also Rubin v. Buckman, 727 F.2d 71, 73 (3d Cir. 1984) (remanding for further proceedings on whether diversity might exist); Williamson v. Tucker, 645 F.2d 404, 414 (5th Cir. 1981) (where subject matter jurisdiction is attacked "the district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss"); Shahmoon Indus., Inc. v. Imperato, 338 F.2d 449, 451-52 (3d Cir. 1964) (remanding case for further inquiry into the jurisdictional facts where the court had "serious doubts"

-10-

as to the district court's jurisdiction based on the factual record and where the factual record only raised doubts as to the accuracy of one of the parties' affidavits). It is certainly possible that one might change his residence with no intent of returning, but not make those connections described in Bank One. Any number of explanations are possible -- physical or mental incapacity, religious objections, to name a few. The point is that where a party has declared his intent to change and remain in his new domicile, and the opposing written submissions do not demonstrate the falsity of the declaration with reasonable certainty, the absence of typical indicia of domicile is not determinative. More is required of the district court before it concludes that a plaintiff has not met his burden and overcome the presumption. We agree with our sister circuits that in these circumstances an evidentiary hearing is appropriate.

Thus, while we note that the district court's decision is by no means wholly unsupported by the record, we are persuaded, for the reasons stated above, that Padilla's complaint should not be dismissed in the absence of an evidentiary hearing that will allow the district court to assess fully Padilla's credibility and resolve certain unanswered questions implicated by the parties' briefing.

We stress that we are not predetermining the ultimate findings of the district court. In conducting a jurisdictional

inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, hold an evidentiary hearing, and hear testimony in order to determine its own jurisdiction. <u>Valentín</u> v. <u>Hospital Bella Vista</u>, 254 F.3d 358, 363 (1st Cir. 2001). We do not pretend to know what the district court may determine as a result of its inquiry; we request only that the inquiry be sufficiently thorough to assure that all parties receive a full and fair opportunity to be heard.[8]

<u>Reversed and Remanded</u>.

---

[8] As a final note, we emphasize that, on remand, Padilla must establish by *preponderance of the evidence* that as of January 30, 2006, the date he filed his complaint, he was domiciled in Florida. <u>García Pérez</u> v. <u>Santaella</u>, 364 F.3d 348, 351-52 (1st Cir. 2004).