CASIANO COMMUNICATIONS, INC., Plaintiff,

v.

Alberto A. VELAZQUEZ PINOL, Defendant.

Civil No. 09–1711(DRD).

United States District Court, D. Puerto Rico.

Sept. 21, 2010.

Cesar H. Soto–Cintron, Cesar H. Soto Cintron Law Office, San Juan, PR, for Plaintiff.

Joan Schlump–Peters, Nachman & Guillemard, San Juan, PR, for Defendant.

***OPINION AND ORDER***

DANIEL R. DOMINGUEZ, District Judge.

## I. PROCEDURAL BACKGROUND

On July 27, 2009, Plaintiff filed its *Complaint* (Docket No. 1) in the instant action. Plaintiff alleged that, *inter alia,* Defendant breached his fiduciary duty to Plaintiff, engaged in conversion of property and misused confidential corporate proprietary information. Plaintiff asserted diversity jurisdiction under 28 U.S.C. § 1332 as the basis for the Court's subject matter jurisdiction. Specifically, Plaintiff claimed that it is domiciled in Puerto Rico and that, at the time when the *Complaint* was served, Defendant was a domiciliary of Connecticut who worked in New York. On September 30, 2009, Defendant filed a motion to dismiss (Docket No. 21) challenging the Court's subject matter jurisdiction under Rule 12(b)(1). Therein, Defendant argues that diversity is lacking in the instant case as his domicile is in Puerto Rico, rather than Connecticut as alleged by Plaintiff. Defendant attaches to this motion his sworn statement and the sworn statement of his wife, as well as other items [1] supporting his assertion that Puerto Rico is his intended domicile.

On October 23, 2009, Plaintiff duly opposed the motion to dismiss (Docket No. 29). Plaintiff argues that Defendant owns no real estate in Puerto Rico, and that his only real asset on the island is an older model car. Plaintiff further asserts that Defendant pays child support to his children, who remain in Puerto Rico, from a bank account opened in New York and that his current wife resides in Connecticut. To this opposition, Plaintiff attaches

---

1. Several of the supporting documents, including bills addressed to Defendant in Puerto Rico, Defendant's social security statement and driver's license, were filed in the Spanish language and remained untranslated. Thus, the Court could not consider their contents under Local Rule 5(g). However, the Court did note that the addresses listed on each were, in fact, within Puerto Rico.

the statement under penalty of perjury of Defendant's former wife, as well as cancelled checks from the New York bank account and an order regarding a nonresident bond issued as to Defendant by the Puerto Rico Court of First Instance in San Juan.[2]

On November 4, 2009, Defendant filed a reply (Docket No. 34), asserting that Plaintiff failed to prove that Defendant's intended domicile is Connecticut. Subsequently, on November 14, 2009, Plaintiff filed a surreply (Docket No. 42), in which it claims that Defendant's motion is supported by self-serving statements. On January 29, 2010, Defendant filed a further motion (Docket No. 49) in which he informed the Court that he had indeed returned to Puerto Rico.

The Court granted Plaintiff's request that it be allowed to conduct directed discovery regarding jurisdictional facts related to diversity (Docket Nos. 30 & 56). The Court subsequently conducted a hearing as to the pending motion to dismiss on August 9, 2010 (Docket No. 75). At the hearing, both Defendant and his current wife testified under oath. After the hearing, both Plaintiff and Defendant filed briefs emphasizing the salient factors as to their respective positions (Docket Nos. 84 & 85).

At this time, Plaintiffs asserts that Defendant, like a gypsy, has no true domicile because he is a "citizen of the wind" without real roots anywhere.[3] Plaintiff rests his legal arguments on two presumptions: first, that "residence is presumed to equal domicile;" and, second, that "a person's domicile is presumed to lay together with

[his] spouse and family." Plaintiff further attempts to define domicile for the purposes of the instant action as it is defined under the laws of Puerto Rico. In his discussion of the relevant jurisdictional facts, Plaintiff notes that, as an employee of the Puerto Rico Development Bank, Defendant could work anywhere in the world. Plaintiff also notes that Defendant decided to marry his current wife while living with her in Connecticut, and claims that this shows Plaintiff's intent to be domiciled in Connecticut. Plaintiff emphasizes the importance of the New York bank account, as well as the real estate owned by Defendant's current wife in Connecticut, as contrasted with Defendant's lack of real estate holdings in Puerto Rico.

Defendant, in turn, argues that although he resided in Connecticut at the time when the *Complaint* was filed in the instant case that residency was intended to be temporary. In fact, Defendant avers, he did not remain in Connecticut and has now returned to Puerto Rico. Defendant highlights that his position in New York was a trust position within the Puerto Rico Development Bank, which is a governmental corporation, rather than a position which required a permanent relocation. Further, Defendant contests Plaintiff's reliance on Defendant's wife's domicile as dispositive of Defendant's domicile. Defendant cites several cases, including First Circuit and District of Puerto Rico cases which recognize the "new rule" that a husband and wife may, indeed, have different domiciles. Defendant then provides a lengthy list of the recognized criteria which weigh against finding that he is a domiciliary of Connecticut. Among those

---

**2.** The order regarding imposition of a nonresident bond on Defendant was later vacated by the local court. (Docket No. 37–1).

**3.** As Plaintiff develops no legal arguments regarding the domicile of persons who qualify as "gypsies" or "homeless wanderers" in his

brief, the Court does not engage in analysis of this claim in the instant *Opinion and Order*. *See e.g. McCoy v. Mass. Inst. of Tech.,* 950 F.2d 13, 22 (1st Cir.1991)(underdeveloped arguments are deemed waived and are unappealable).

factors are the temporary nature of his position in New York, his lack of financial and property ties to Connecticut, his retention of his Puerto Rico driver's license, voter registration card and cell phone number and his filing of tax returns in Puerto Rico. Further, Defendant emphasizes that Defendant's wife has strong ties to Puerto Rico.

## II. MOTION TO DISMISS UNDER 12(b)(1) FOR LACK OF DIVERSITY JURISDICTION

■ Defendant in the instant case has requested dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure. A challenge under Rule 12(b)(1) constitutes a challenge to federal subject matter jurisdiction, which includes ripeness, mootness, sovereign immunity and, of course, subject matter jurisdiction. *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 362–63 (1st Cir. 2001). Where subject matter jurisdiction is challenged under 12(b)(1), the party asserting jurisdiction bears the burden of demonstrating the existence of federal subject matter jurisdiction. *Skwira v. U.S.*, 344 F.3d 64, 71 (1st Cir.2003). Thus, Plaintiff in the instant case bears the burden of establishing that the Court exercises subject matter jurisdiction based on diversity of citizenship by the preponderance of the evidence. *E.g. Padilla–Mangual v. Pavia Hosp.*, 516 F.3d 29, 31 (1st Cir.2008).

■ Where federal jurisdiction is based on diversity, the matter in controversy must be between citizens of different states. 28 U.S.C. § 1332(a)(1). "For purposes of diversity, a person is a citizen of the state in which he is domiciled." *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 49 (1st Cir.1992). Domicile is determined at the time when the suit is filed, and a subsequent change in state citizenship does not affect domicile for diversity purposes. *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir.1991).

■ This Circuit defines domicile of a natural person as "the place where [a party] has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Valentin*, 254 F.3d at 366 (internal quote omitted). A party may only have one domicile at a time. *Id.* Where a party changes residency, a presumption in favor of continuing domicile exists and, in order to prove that domicile has changed, the party asserting diversity must show that the allegedly non-diverse party is (1) present in the new domicile and (2) intends to remain there. *Bank One*, 964 F.2d at 50.

> The factors relevant to determining a party's intent include: the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment.

*Id.* (quoting *Lundquist*, 946 F.2d at 11–12)(internal quotation omitted). No one listed factor is controlling, although in this Circuit, the place where a party is registered to vote constitutes a "weighty" factor. *E.g. Padilla–Mangual*, 516 F.3d at 32.

■ When ruling upon a motion to dismiss for lack of diversity, a Court is entitled to consider testimony and evidence presented in an evidentiary hearing as well as the paper record previously created by the litigants. *See Id.* at 34. The existence of diversity is a mixed question of law and fact and the Court must necessarily perform findings regarding credibility, particularly where they relate to the allegedly non-diverse party's expressed intent regarding domicile. *See Bank One*, 964 F.2d at 52.

■ Defendant in the instant case has spent the majority of his life in Puerto

Rico. With the exception of a few years of college in Massachusetts, his education occurred exclusively in Puerto Rico. Those college years in New England, as well as his recent ten-month stint living in Connecticut while working in a trust position for the Puerto Rico Development Bank in New York,[4] represent the only time during which he has not resided in Puerto Rico.

Defendant's former wife was awarded their home in Puerto Rico pursuant to the terms of their divorce, which was entered in 1996, prior to the filing of the instant case. Following the divorce, Defendant lived primarily with his mother at her home in San Juan until he left the island to begin his position with the Puerto Rico Development Bank in New York. Her address is listed on Defendant's Puerto Rico driver's license, Puerto Rico voter registration card, cell phone bill, social security statements, and Triple S health insurance, as well as on several credit card statements.

Prior to February of 2009, when Defendant began working in New York, Puerto Rico was his domicile as he had never resided outside the island, except to attend school. *See e.g. Murphy v. Newport Waterfront Landing, Inc.*, 806 F.Supp. 322, 324 (D.R.I.1992)(noting that, generally, out-of-state students lack the intention to remain in the state indefinitely). Accordingly, the question presently before the Court is whether Defendant had changed his domicile from Puerto Rico to Connecticut when he accepted the trust position at the New York office of the Puerto Rico Development Bank prior to the commencement of the instant action. Contrary to Plaintiff's bold assertion that domicile should presumed to be Defendant's current residence, the Court notes that Plaintiff's burden here is to overcome the presumption for Defendant's continuing domicile in Puerto Rico. *See Bank One*, 964 F.2d at 50.

First, Defendant is registered to vote in Puerto Rico, not in Connecticut, and Defendant has never voted anywhere except in Puerto Rico. Accordingly, this factor weighs heavily towards a finding that Defendant lacked the requisite intent to change his domicile and citizenship to Connecticut. *See Padilla–Mangual*, 516 F.3d at 32. Additionally, Defendant continued to file his tax returns in Puerto Rico, rather than in Connecticut, even though this act resulted in filing separately from his current wife. Further, Defendant's only vehicle remains in Puerto Rico and Defendant holds a driver's license from Puerto Rico, which he never exchanged for a Connecticut license. Defendant has submitted to the Court several credit card statements for cards which he used while in Connecticut, but which display his mother's address in Puerto Rico as his address. Although Defendant opened a bank account in New York while he worked there, he also continued to use his Puerto Rico bank account during his time in Connecticut. Thus, all of these factors weigh towards a finding

---

4. Defendant's position is director of the New York office of the Puerto Rico Development Bank. (Docket No. 27–2, 80–14). As stated in the letter officially appointing him to the position, "[t]his position is classified as a trust position. According to what is established in section 2.7 of the Person Regulation for Management Employees and Officers, approves (sic) in June 8, 1978, the trust employees are of free selection and removal by the nominating authority." (*Id.*) Thus, persons, such as Defendant, who are employed in governmental trust positions do not hold any property right to their positions and may be removed at any time with or without cause without violating their constitutional rights. *See Galloza v. Foy*, 389 F.3d 26, 33–34 (1st Cir.2004). Further, even if Defendant were employed in a career position, he would not enjoy any right to work in a particular location. *See e.g. Gonzalez Vega v. Hernandez Colon*, 682 F.Supp. 131, 135–36 (D.P.R.1988).

that Defendant did not intend to make Connecticut his domicile and state of legal citizenship.

Although Defendant worked in New York at the time when the instant action commenced, that position was a temporary trust position. As a trust employee of the Puerto Rico Development Bank, Defendant could not have remained indefinitely in the position in New York.[5] In fact, on December 10, 2009, Defendant was assigned to work with the Department of Education in Puerto Rico and subsequently transferred back to the island. Thus, as Defendant's employment outside Puerto Rico was temporary in nature, the Court finds that this factor does not weigh strongly against a finding that his domicile remained in Puerto Rico.

Throughout the course of the instant case, Defendant has vocalized his intent to return to Puerto Rico and his desire that Puerto Rico remain his place of domicile, both through his sworn statement and in his testimony given under oath. In light of the aforementioned supporting jurisdictional evidence, the Court finds Defendant's asserted intent to be credible, particularly as Defendant has, in fact, since returned to Puerto Rico and resumed residence at his mother's home. *See e.g. Garcia Perez v. Santaella,* 364 F.3d 348, 351 (1st Cir.2004)(stating that "subsequent events may bear on the sincerity of a professed intent to remain"). Thus, for the reasons set forth above, Defendant lacked the requisite intent to change his domicile from Puerto Rico to Connecticut and remains a citizen of Puerto Rico for diversity purposes.

**5.** For example, a mere change of government or loss of trust in Defendant by the president or board of directors of the bank could trigger immediate loss of employment.

**6.** Specifically, Defendant's current wife testified that:

As a final attempt at establishing diversity jurisdiction, Plaintiff asserts that Defendant's wife is a domiciliary of Connecticut and that, therefore, Defendant must be a domiciliary of Connecticut. Plaintiff argues that this assumption is "black letter law." However, as Defendant points out, the rule that a husband and wife must share a single domicile has eroded to the point of obliteration over the past century. Rather, a "new rule" has arisen under which the domicile of a husband and wife may be determined separately. *See e.g. Izquierdo v. Denton Constr. Co.,* No. 94–1633, 1994 WL 584544 (1st Cir.1994)(determining that the domicile of a wife was different from that of her husband); *Garcia v. Sanchez,* 2008 WL 7765261 (D.P.R. Sept. 30, 2008)(determining a party's domicile without considering that of his wife and child); *Codagnone v. Perrin,* 351 F.Supp. 1126, 1128 n. 1 (D.R.I. 1972) (refusing to approve the traditional doctrine as it was "derived from the common law notion that a husband and wife constitute but one legal entity, the husband").

Additionally, although Defendant's wife currently resides in Connecticut with her children and owns property there which she acquired from a previous marriage, she has strong ties to Puerto Rico. She is Puerto Rican and completed her primary education on the island. Her parents and siblings live in Puerto Rico and she spends substantial periods of time on the island visiting them every year. Further, her divorce decree severing her ties with her former husband specifies[6] that she may move to Puerto Rico with her children at any time without any objection from her

[W]hat I told you is that at the time that we got divorced there was a clause in my—how do you say—the sentence—I made sure that clause was put in that it says that I can move back to Puerto Rico the moment that I decide to move back without his objection. And he signed it because I have al-

former husband. The Court finds the existence of this clause in Defendant's current wife's divorce decree persuasive evidence of her intent to eventually return to Puerto Rico when viewed in conjunction with her other ties to the island, which are described above. Further, like Defendant, she expressed her intent to return to Puerto Rico once Defendant's employment allows for their return in both her oral testimony at the hearing and in her sworn statement. Even if the Court were to consider Defendant and his wife as one person for the purposes of determining domicile, the facts which pertain to his wife are not sufficiently strong to counteract Defendant's clear intent to remain a domiciliary of Puerto Rico, particularly as she intends to return to Puerto Rico.

Thus, neither the current state of the law under the "new rule" as to marital domicile, nor the facts relating to Defendant's wife show that the couple intends to make Connecticut its domicile by the preponderance of the evidence. Consequently, the Court holds that Plaintiff has failed to establish diversity and must dismiss the instant action for lack of subject matter jurisdiction.

### III. CONCLUSION

For the reasons set forth above, the Court finds that it lacks the requisite subject matter jurisdiction to entertain the instant case and, accordingly, **GRANTS** Defendant's motion to dismiss under Rule 12(b)(1) (Docket No. 21). The *Complaint* is hereby **DISMISSED WITHOUT PREJUDICE.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

ways thought that I would come back with them.

(Docket No. 84–2, Tr. at p. 14, l.14–21). No objections were lodged to this testimony.