# United States Court of Appeals
## For the First Circuit

No. 20-1655

JOSÉ A. SANTANA DE LA ROSA; JOSÉ A. ALAGRÍN PABÓN,

Plaintiffs, Appellants,

v.

EDWIN SANTANA DE LA ROSA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Howard and Thompson, Circuit Judges,
and Woodcock, District Judge.[*]

Néstor M. Méndez-Gómez, with whom Isabel C. Frau-Nicole and
Pietrantoni Mendez & Alvarez LLC were on brief, for appellants.

Harold D. Vicente-González, with whom Christian A.
Nieves-Rodríguez, Heriberto López-Guzmán, Vicente & Cuebas, and H.
López Law, LLC were on brief, for appellee.

September 25, 2024

---

[*] Of the District of Maine, sitting by designation.

HOWARD, <u>Circuit Judge</u>.  José Santana De la Rosa ("José") and José Algarín Pabón ("Algarín") challenge the dismissal of their action against Edwin Santana De la Rosa ("Edwin") for lack of subject matter jurisdiction.  It is not the first time that these parties have faced off against each other in a courtroom.  The instant suit involves a claim under Puerto Rico law that Edwin committed abuse of process when he sued José, his brother, and Algarín, the executor of their mother's estate, in a Puerto Rico court over various financial dealings.  To get their state law claim into federal court, José and Algarín asserted that Edwin changed his domicile from Puerto Rico to New York after Hurricane Maria in 2017.  Following jurisdictional discovery, the district court disagreed and granted Edwin's motion to dismiss.  The district court's findings were not clearly erroneous; accordingly, we affirm.

## I.

This case commenced in August 2018, when José and Algarín sued Edwin under P.R. Laws Ann. tit. 31, § 5141, in U.S. District Court for the District of Puerto Rico.  To establish diversity jurisdiction under 28 U.S.C. § 1332(a), José and Algarín claimed in relevant part that each of them was domiciled in Puerto Rico and that Edwin was domiciled in New York.  Edwin shortly thereafter moved to dismiss the complaint for lack of subject matter jurisdiction.  Attached to that motion was an affidavit in which

Edwin attested, "I am domiciled in Puerto Rico, which is where I have my true, fixed home and principal establishment, and to which, whenever I am absent, I have the intention of returning." The district court subsequently ordered jurisdictional discovery, which lasted for approximately seven months and generated copious records detailing the recent life and travels of Edwin. We draw on those records in summarizing the undisputed facts relevant to Edwin's domicile.

Edwin is retired and owns residences in both Puerto Rico and New York City. On the island, he has an apartment that he purchased for $650,000 in 1992. In the city, he owns a residence at the Baccarat Hotel, for which he paid $10 million in 2015.[1] Edwin has spent substantial sums on improvements for both homes: approximately $1 million in Puerto Rico and $250,000 in New York.

During the period between the devastating impact of Hurricane Maria on Puerto Rico in September 2017 and the filing of this lawsuit, Edwin and his family spent a considerable amount of time in New York. Flight records indicate that the family traveled to the city in the weeks following the hurricane and that Edwin flew back and forth between New York and Puerto Rico on various occasions during the following eleven months. Records from AT&T

---

[1] After buying the Baccarat residence, Edwin sold another apartment that he had owned in New York for approximately nine years.

appear to demonstrate that Edwin used his cell phone in New York on approximately 250 days between October 2017 and the end of August 2018, although he kept his phone number with a Puerto Rico area code.

Discovery painted a picture of the life that Edwin and his family lived in New York during this time. His daughter -- who had previously attended school in Puerto Rico and later graduated from high school there in 2019 -- enrolled in a New York school for the 2017-18 academic year.[2] Edwin owned no vehicles in New York, but debit card statements from an account in his and his spouse's names detailed purchases of a variety of everyday items in the city. These statements were initially sent to Edwin's apartment in Puerto Rico but in June 2018 began being sent to the Baccarat residence.

Throughout his time in New York, Edwin maintained ties to Puerto Rico beyond his residence on the island and travel there. For instance, he listed his Puerto Rico address on his 2017 and 2018 tax returns, possessed a Puerto Rico driver's license, and was registered to vote in Puerto Rico.

In arguing to the district court in favor of subject matter jurisdiction, the plaintiffs asserted that Edwin "was domiciled in the state of New York starting in October 2017 and

_____

[2] Edwin's daughter returned to New York for college after graduating from high school in Puerto Rico.

- 4 -

all throughout 2018." The district court, however, reasoned that, although José and Algarín had established that Edwin was physically present in New York when the lawsuit was filed, they had failed to sufficiently demonstrate that he intended to remain there indefinitely. Accordingly, the district court granted Edwin's motion to dismiss. Unpleased with this result, José and Algarín filed a motion to alter judgment under Rule 59(e) of the Federal Rules of Civil Procedure. The district court denied that motion, and José and Algarín timely appealed, requesting that we reverse the district court's decision to grant Edwin's motion to dismiss or, in the alternative, remand for an evidentiary hearing.[3]

**II.**

**A.**

Complete diversity among the parties is one of the requirements of federal diversity jurisdiction. See 28 U.S.C. § 1332(a)(1); Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP, 362 F.3d 136, 139 (1st Cir. 2004) (citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267 (1806)). At the time that the

---

[3] Although José and Algarín nominally appealed from both decisions of the district court, their argument before us is geared entirely towards establishing that the district court erred in granting Edwin's motion to dismiss. They do not cite, let alone attempt to engage, our abuse of discretion standard for reviewing a district court's denial of a Rule 59(e) motion. See Markel Am. Ins. Co. v. Diaz-Santiago, 674 F.3d 21, 32 (1st Cir. 2012). We accordingly hold that José and Algarín have waived any challenge to the district court's denial of their motion to alter judgment. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

lawsuit is filed in diversity, "no plaintiff may be a citizen of the same state as any defendant." BRT Mgmt. LLC v. Malden Storage LLC, 68 F.4th 691, 695 (1st Cir. 2023); see Padilla-Mangual v. Pavía Hosp., 516 F.3d 29, 31 (1st Cir. 2008).

For diversity purposes, a person is a citizen of the state in which the person is domiciled. Valentin v. Hosp. Bella Vista, 254 F.3d 358, 366 (1st Cir. 2001). "A person's domicile 'is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" Aponte-Dávila v. Mun. of Caguas, 828 F.3d 40, 46 (1st Cir. 2016) (quoting Rodriguez-Dais v. Sierra-Martinez, 853 F.2d 1027, 1029 (1st Cir. 1988)). Domicile and residence "are not the same thing." Id. "While a person may have more than one residence, he can have only one domicile." Bank One, Tex., N.A. v. Montle, 964 F.2d 48, 53 (1st Cir. 1992).

"There is, ordinarily, a presumption of continuing domicile." Padilla-Mangual, 516 F.3d at 31. In order to change his domicile, a person must: (1) be present in the new state; and (2) intend to remain there indefinitely. See Valentin, 254 F.3d at 366–67. Factors that we have previously stated are "relevant to determining a party's intent include: 'the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located, driver's and other licenses obtained, [and] bank accounts maintained.'"

Padilla-Mangual, 516 F.3d at 32 (quoting Bank One, 964 F.2d at 50).  But we have made clear that these factors are "examples of indicia of intent" rather than requirements.  Id. at 33.

**B.**

The party invoking the court's diversity jurisdiction has the burden of proving domicile by a preponderance of the evidence.  Rodríguez v. Señor Frog's de la Isla, Inc., 642 F.3d 28, 32 (1st Cir. 2011).  On appeal, a district court's determination of domicile is reviewed for clear error.  Hearts With Haiti, Inc. v. Kendrick, 856 F.3d 1, 2-3 (1st Cir. 2017) (citing Bank One, 964 F.2d at 51).  "Accordingly, we must accept the court's findings and the conclusions drawn therefrom unless the whole of the record leaves us with 'a strong, unyielding belief that a mistake has been made.'"  Valentin, 254 F.3d at 365 (quoting Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990)).  "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."  Nevor v. Moneypenny Holdings, LLC, 842 F.3d 113, 117-18 (1st Cir. 2016) (quoting Reliance Steel Prods. Co. v. Nat'l Fire Ins. Co., 880 F.2d 575, 576 (1st Cir. 1989)).  We nevertheless bear in mind that "where the district court's result is based entirely on documentary evidence, 'the presumption that the court reached a correct result is somewhat lessened relative to findings based on

oral testimony.'" Aponte-Dávila, 828 F.3d at 46 (quoting Padilla-Mangual, 516 F.3d at 33-34).

### III.

We begin our analysis where the parties agree. No one disputes that Edwin was domiciled in Puerto Rico when Hurricane Maria struck the island in September 2017. We thus presume that he maintained his domicile there unless José and Algarín can establish by a preponderance of the evidence that Edwin changed his domicile to New York. Edwin, for his part, concedes that he was physically present in New York when the lawsuit was filed in August 2018. Accordingly, the primary issue for us to decide is whether the district court clearly erred in determining that Edwin did not then intend to remain in New York indefinitely.

José and Algarín's arguments in favor of reversal come in two general flavors. First, they claim that the district court "g[ave] insufficient weight" to evidence that tended to show Edwin intended to remain indefinitely in New York. Second, they contend that the district court "plac[ed] too much emphasis on certain factors it found to favor a Puerto Rico domicile." We consider and reject each argument and its various hues in turn.

### A.

José and Algarín first contend that the district court erred by disregarding evidence that established New York "as Edwin['s] home base." They point primarily to flight records that

showed Edwin traveling to Puerto Rico but returning to New York in the months following Hurricane Maria and phone records that indicated Edwin was frequently using his phone in the city. Relatedly, José and Algarín maintain that the district court "ignored" the debit card statements that "confirmed a steady, day-to-day presence in New York."

This line of attack mistakenly equates residence with domicile. While "residence is relevant to the question of domicile," we have previously cautioned against "placing altogether too much emphasis on this factor in light of the circumstances." Aponte-Dávila, 828 F.3d at 48. Here, the evidence strongly suggests that New York became Edwin's primary residence, at least on a temporary basis, in the months leading up to the filing of this lawsuit. But "[w]hen considered in the context of [Edwin]'s reason for being in [New York] in the first place," id., we are not left with a strong, unyielding belief that the district court erred. Edwin describes this time in New York as "a forced family relocation caused by the devastation of Hurricane Maria." There is, of course, no rule that says a person who relocates following a natural disaster is precluded from effecting a change in domicile. See Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 701 (1st Cir. 1979) ("It has long been the rule that motive for the change in residence is irrelevant in determining domicile."). But "in light of [Edwin]'s continued ties to [Puerto

Rico]," Aponte-Dávila, 828 F.3d at 49, the fact that a destructive hurricane prompted his relocation is particularly salient here.[4]

---

[4] José and Algarín make no substantive attempt to argue that the district court misapplied this court's decisions in arguably analogous cases, where we have several times confronted the issue of determining the domicile of a party who has relocated in order to receive medical treatment. See Hawes, 598 F.2d at 699-700; Valentin, 254 F.3d at 361-62; García Pérez v. Santaella, 364 F.3d 348, 349 (1st Cir. 2004); Aponte-Dávila, 828 F.3d at 42. We have previously said that, because those cases, "like the case at hand, were before this court on clear error review, we cannot -- and do not -- suggest that their outcomes are strictly determinative of this case." Aponte-Dávila, 828 F.3d at 50. We nevertheless note that there is far less in this case from which we can discern an intent on the part of Edwin to remain indefinitely in New York than in the two cases in which we have reversed a district court's determination that a party had not changed domicile. In García Pérez, we held that the district court erred in determining that two plaintiffs remained domiciled in Puerto Rico after they relocated to Florida. 364 F.3d at 349. Although the plaintiffs rented out -- instead of selling -- their home on the island and derived approximately one-sixth of their income from their interest in a Puerto Rican restaurant franchise, we found that those factors were significantly outweighed by their ties to Florida. Id. at 352. Namely, the plaintiffs registered to vote in Florida, acquired Florida drivers' licenses, sold their car in Puerto Rico, and purchased two cars in Florida. Id. Additionally, one of the plaintiffs studied for and passed the Florida bar exam and was "spearheading" the opening of a Florida branch office for his Puerto Rico-based law firm. Id. at 353. In Hawes, we held that the district court erred in determining that a husband and wife remained domiciled in Puerto Rico after they relocated to New York. 598 F.2d at 700-01. The two had left Puerto Rico because there was no rehabilitation center there that could provide adequate treatment for the husband following an accident that turned him "from a normal man into a hopeless cripple." Id. at 699-700. We have called Hawes a "closer case" than García Pérez, see Aponte-Dávila, 828 F.3d at 50, perhaps because the wife eventually returned to Puerto Rico, some two years after the filing of the suit and one year after the death of her husband. See Hawes, 598 F.2d at 701. Still, the case does not compel us to reverse the district court here, because "the facts there strongly suggested an indefinite intention to stay in New York that simply is not present in this case." Aponte-Dávila, 828 F.3d at 50.

Furthermore, we note that the record is largely devoid of any evidence that would allow us to infer that Edwin intended to remain primarily in New York beyond the time necessary for recovery efforts to take place in Puerto Rico.

José and Algarín next contend that the district court erred by disregarding the discrepancy in purchase price between Edwin's Puerto Rico apartment ($650,000) and his New York residence at the Baccarat Hotel ($10 million), as well as the approximately $250,000 that Edwin spent on improvements to the latter. The implication seems to be that these sums signify Edwin had a greater commitment to his life in New York than in Puerto Rico at the time this suit was filed.

The argument is illusory. The apartments were purchased over two decades apart from each other and are separated by more than 1,500 miles of ocean; a one-to-one comparison of purchase price is of hardly any use in gauging whether, in August 2018, Edwin intended to remain indefinitely in New York. Even if it was, José and Algarín fail to address the more than $1 million that Edwin had spent on improvements to his Puerto Rico apartment.

José and Algarín's focus on the purchase of and repairs to the New York apartment is also inconsistent with their basic jurisdictional theory of the case -- that Edwin commenced his domicile in New York after Hurricane Maria. Edwin purchased the Baccarat residence in 2015, two years before Hurricane Maria, and

the record indicates that all improvements to the property were paid for prior to the storm making its landfall on Puerto Rico. Similarly, Edwin had owned another apartment in New York for approximately nine years before acquiring the Baccarat residence, which as the district court noted, works against José and Algarín's apparent theory that the 2015 purchase was a strong indicator of Edwin's intent to change his domicile from Puerto Rico to New York.

The attendance of Edwin's daughter at a New York high school during the 2017-18 academic year is the one remaining piece of evidence to which José and Algarín believe the district court gave insufficient weight. We are unpersuaded. The district court discounted this evidence because Edwin's daughter returned to school in Puerto Rico the following year. That was clear error, José and Algarín now tell us, because "Edwin and his wife could [have] remain[ed] domiciled in New York while their daughter returned to Puerto Rico to finish high school." See Hawes, 598 F.2d at 704 (citing the age of plaintiffs' eighteen-year-old daughter in explaining why the court did not "attach much significance" in the domicile analysis to the fact that the daughter did not relocate with her parents). But the same reasoning could be used to justify the district court's decision that José and Algarín now attack. That is to say that Edwin could just as conceivably have remained domiciled in Puerto Rico while his daughter spent a year of high school in New York. Under these

circumstances, we cannot say that it was clear error for the district court to afford little weight to where Edwin's daughter spent her final two years of high school.

**B.**

In addition to downplaying evidence that they take to support a finding that Edwin intended to remain indefinitely in New York, José and Algarín contend that the district court also "plac[ed] too much emphasis on certain factors it found to favor a Puerto Rico domicile." Chief among these are Edwin's tax returns. The district court noted that Edwin filed them in Puerto Rico in its decision granting his motion to dismiss for lack of subject matter jurisdiction.

José and Algarín cite García Pérez v. Santaella, where we guided that "[t]he act of filing [a tax] return is not by itself evidence of domicile" because "any individual deriving income from Puerto Rico is required to file a tax return, regardless of citizenship." 364 F.3d 348, 353 (1st Cir. 2004). We prefaced that statement, however, by noting that the plaintiffs in the case had listed their Florida address on their returns, id., which logically cut against the district court's finding that the plaintiffs remained domiciled in Puerto Rico. See also supra note 4 (discussing García Pérez further). Here, by contrast, the record shows that Edwin listed the address of his Puerto Rico apartment on the tax returns that he filed in 2017 and 2018. We therefore

cannot say that the district court clearly erred in factoring the returns into its determination that Edwin had not effected a change in his domicile to New York.

José and Algarín also fault the district court for failing to consider that "there was at least the possibility that [Edwin] had to file as a New York resident for tax year 2018 pursuant to the New York Tax Code." This argument has not been preserved for appeal. See Thomas v. Rhode Island, 542 F.3d 944, 949 (1st Cir. 2008) ("Appellants cannot raise an argument on appeal that was not 'squarely and timely raised in the trial court.'" (quoting Iverson v. City of Boston, 452 F.3d 94, 102 (1st Cir. 2006))). José and Algarín did not offer this argument to the district court in their post-discovery memo in favor of subject matter jurisdiction. Instead, they developed it for the first time in their Rule 59(e) motion to alter judgment.[5] Since they have waived any challenge to the denial of that post-judgment motion on appeal, see supra note 3, it would be improper for us to

---

[5] José and Algarín asserted in their Rule 59(e) motion that they had previously argued that Edwin should have filed tax returns in New York. As evidence, they cited a single page from a filing that they made while discovery was still ongoing. That page, buried in a reply to Edwin's opposition to a motion for sanctions filed by José and Algarín, is not enough for us to say José and Algarín's argument that Edwin was legally obligated in 2018 to file taxes in New York was "squarely and timely raised" for the district court to consider in its domicile analysis. See Iverson, 452 F.3d at 102.

- 14 -

consider the argument in determining whether the district court clearly erred in granting Edwin's motion to dismiss.

Finally, José and Algarín take issue with the district court considering in its calculus that Edwin maintained a cell phone number with a Puerto Rico area code and did not own any vehicles in New York. But even supposing that José and Algarín are correct in arguing that these factors should carry relatively little weight in the domicile analysis, we see no indication that the district court excessively relied on them here. Instead, it appears that the district court trained its focus primarily on Edwin's real property.

### C.

The burden was ultimately on José and Algarín to establish that Edwin effected a change in domicile from Puerto Rico to New York. The record demonstrates that, despite relocating himself and his family to New York in the wake of Hurricane Maria, Edwin continued to own his apartment in Puerto Rico and repeatedly returned to the island prior to the commencement of this action. Given those factors and considering the other indicia of intent in the record -- the listed residence on Edwin's tax returns, his Puerto Rico voter registration, and his Puerto Rico driver's license to name just a few -- we cannot say that the district court clearly erred in concluding that José and Algarín failed to clear the bar.

There is one loose end to tie up. José and Algarín request in the alternative that we remand to the district court for an evidentiary hearing "to fully assess Edwin['s] credibility and to resolve the discrepancies in the record." We decline to do so. As an initial matter, there is no indication in its decision that the district court relied on the affidavit that Edwin attached to his motion to dismiss in which he averred that Puerto Rico was his domicile. Instead, the district court sufficiently weighed the evidence that was uncovered during the extensive jurisdictional discovery that followed the filing of that affidavit.

Furthermore, José and Algarín failed to timely request an evidentiary hearing below. While their initial motion for jurisdictional discovery briefly mentioned that the district court should "if necessary, subsequent[ to discovery] hold an evidentiary hearing," their post-discovery memo in favor of subject matter jurisdiction made no reference to such a hearing. Instead, José and Algarín argued in that memo that "[t]he evidence [was] clear" that Edwin was domiciled in New York and asked the district court to simply deny Edwin's motion to dismiss. We therefore cannot fault the district court for believing that José and Algarín had decided, with the benefit of discovery, that an

evidentiary hearing was not needed.[6] <u>Cf.</u> <u>Alicea</u> v. <u>Machete Music</u>, 744 F.3d 773, 788 (1st Cir. 2014) ("[H]aving failed to adequately raise this claim before the district court, the plaintiffs cannot now raise it on appeal.").

**\*\*\***

For the foregoing reasons, we **<u>affirm</u>** the judgment of the district court.

---

[6] Like their argument that the district court should have considered whether Edwin was legally obligated to file a New York tax return in 2018, José and Algarín did not develop their request for an evidentiary hearing until their Rule 59(e) motion to alter judgment. We once again note therefore that José and Algarín have waived any challenge to the district court's denial of that motion. <u>See</u> <u>supra</u> note 3.